# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| MOHAMED SOLTAN, | ) | Civil Action No.: 20-cv-1437 (CKK) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| HAZEM ABDEL AZIZ EL BEBLAWI | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF MOHAMED SOLTAN'S MEMORANDUM OF FACTS AND LAW IN SUPPORT OF MOTION FOR EMERGENCY STATUS CONFERENCE

Eric L. Lewis (D.C. Bar #394643)
Waleed Nassar (D.C. Bar #992659)
Jeffrey D. Robinson (D.C. Bar #376037)
Aisha E. Bembry (D.C. Bar #4889500)
LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC
1101 New York Ave., N.W, Suite 1000
Washington, D.C. 20005
(202) 833- 8900 (voice)
(202) 466-5738 (facsimile)

Counsel for Plaintiff Mohamed Soltan

**TABLE OF CONTENTS**

I.   **STATEMENT OF FACTS** ........................................................................2

  A.   Filing and Service of Complaint ........................................................2

  B.   Plaintiff's Family Members Were First Threatened at Gunpoint in Their Homes ...3

  C.   Plaintiff's Family Members Have Been Arrested and Held Without Warrant and No Charges Have Been Filed ..................................................4

II.  **LEGAL ARGUMENT** ............................................................................5

  A.   The Court Has the Inherent Power to Investigate and Manage the Conduct of Litigants ....................................................................................5

  B.   Plaintiff Has a Good Faith Basis to Believe That that Defendant Beblawi May Have Some Involvement in Misconduct that Threatens to Subvert Justice in These Proceedings ..............................................................6

  C.   Plaintiff Seeks an Emergency Status Conference for the Court to Question Defendant Beblawi About His Possible Involvement in or Knowledge of These Attacks .....................................................................................6

III. **CONCLUSION** ....................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Dunn*,
  6 Wheat. 204, 227, 5 L.Ed. 242 (1821) ...........................................................................5

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .........................................................................................................5

*Cooke v. United States*,
  267 U.S. 517 (1925) .....................................................................................................5, 7

*Life & Fire Ins. Co. v. Adams*,
  34 U.S. 571 (1835) ...........................................................................................................7

*Link v. Wabash R. Co.*,
  370 U.S. 626 (1962) .........................................................................................................5

*NAACP, Jefferson Cnty. Branch v. Brock*,
  619 F. Supp. 846 (D.D.C. 1985) ......................................................................................7

*Owens v. Republic of Sudan*,
  No. CV 01-2244 (JDB), 2014 WL 12799213 (D.D.C. Sept. 26, 2014) ..........................7

*Universal Oil Products Co. v. Root Refining Co.*,
  328 U.S. 575 (1946) .........................................................................................................5

**Statutes**

*All Writs Act*, 28 U.S.C. § 1651(a) (1976) ..........................................................................7

*Torture Victim Protection Act,* 106 § 73 (1992) (codified at, 28 U.S.C. §1350) .................2

**Other Authorities**

60 C.J.S. Motions & Orders § 23 (2014) ..............................................................................7

Plaintiff Mohamed Soltan respectfully moves this Court for an emergency status conference for the Court to inquire about the knowledge and potential involvement of Defendant Hazem Abdel Aziz El Beblawi in troubling events in Egypt that apparently seek to intimidate Plaintiff and obstruct justice in this case.  As noted in the Notice of Filing dated June 10, 2020 (ECF #11), and the Second Declaration of Mohamed Soltan filed herewith, Plaintiff's family was first threatened through actions taken by the Government of Egypt ransacking family homes at gunpoint in the middle of the night.  Now, five of his family members have been arrested without warrants, charges or disclosure of their whereabouts and it has been explicitly stated by the Egyptian authorities that their release is contingent upon the dropping of Plaintiff's lawsuit that is currently before the Court.

This case is brought under the Torture Victim Protection Act, alleging torture overseen by the former Prime Minister of Egypt.  Immediately after Defendant Beblawi was served, similar abuses of basic human rights have been visited on Plaintiff's immediate family in an apparent attempt to coerce Plaintiff to drop this case.  Plaintiff seeks an emergency status conference before the Court so that the Court can ascertain the actions and communications undertaken by Defendant in the interval between service of the Complaint and the abusive treatment of Plaintiff's

As detailed herein, the first attack on Plaintiff's family occurred just a few days after the service of the Summons and Complaint on Defendant Beblawi.  During this attack, Plaintiff's name was specifically referenced and his family members were questioned concerning him.  In response, Plaintiff filed a Notice to inform this Court of the details of what had occurred.  Immediately following the filing and service of the Notice to the Court, another brazen attempt at intimidation occurred this time with not only an explicit reference to Plaintiff but now also to the current case and an accompanying demand for Plaintiff to drop it in exchange for his cousins' freedom.  Given these

troubling attempts at unlawful intimidation, Plaintiff now urgently seeks the Court's involvement to determine the nature and extent of Defendant Beblawi's involvement in or knowledge of these attacks against Plaintiff's family, to ascertain any actions or communications on his part that may be related to what has occurred in Egypt, and to prevent Defendant Beblawi from taking future actions or communicating with persons in Egypt which will have the effect of subverting justice in this case.

## I.     STATEMENT OF FACTS

### A.     Filing and Service of Complaint

On June 1, 2020, Plaintiff Mohamed Soltan filed the above-captioned action against Defendant Hazem Abdel Aziz El Beblawi, the former Prime Minister of Egypt, under the Torture Victim Protection Act, ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at, 28 U.S.C. §1350). The Complaint alleges that while serving as Prime Minister, Defendant Beblawi ordered, directed and authorized (i) a massacre in Rabaa Square in which over a thousand innocent protesters were killed and Plaintiff Soltan was targeted for extrajudicial killing; and (ii) Plaintiff Soltan's subsequent arrest and brutal torture for his role in communicating the brutal events to the outside world. *See* Complaint (ECF #1) at 1-2.

Plaintiff also named others directly implicated in his torture as "Un-sued Defendants." The Un-sued Defendants are Abdel Fattah el-Sisi, the current Egyptian President and former Deputy Prime Minister for Security and Defense Minister; Abbas Kamel, el-Sisi's former Chief of Staff and current Director of The General Intelligence Service; Mohamed Ibrahim Mustafa, also known as Mohamed Ibrahim, the former Egyptian Minister of the Interior; Mahmoud Sayed Abdel Hamid Sha'rawi, the former Assistant Minister of Interior and Deputy Director of the National Security Agency and current Minister of Local Development; and, Tamer Al-Fergany, the former Attorney General of State Security Prosecution and current Head of the Anti-Corruption Authority

2

(collectively, "Un-sued Defendants").  *Id.* at 2.  Each of these individuals remain senior officials in Egypt, the first two of whom have responsibilities that include direction and supervision of the intertwined secret police, prison authorities and prosecution of political prisoners.

The Un-sued Defendants were not sued because they are not now physically present in the United States.  With respect to President el-Sisi, he is also protected by head of state immunity for as long as he remains President.  As Defendant Beblawi was the only person with a known presence in the United States, Plaintiff proceeded to serve him with the Summons and Complaint last Wednesday, June 3, 2020.

B.    Plaintiff's Family Members Were First Threatened at Gunpoint in Their Homes

Subsequent to the serving of the Complaint, Plaintiff's family in Egypt were subject to raids in the middle of the night.  As detailed in the Declaration of Mohamed Soltan dated June 10, 2020, attached as Exhibit A, on June 9, 2020, men, women and young children were held at gunpoint in the Soltan family home in Monofeya Province, including the apartments of two of his uncles.  Both apartments were ransacked, and computers, phones and other property were taken and examined by security officials.  The persons present at the apartments were asked specifically about Plaintiff and warned that while Plaintiff may be in the U.S., they are in Egypt and the officials will come back.

On June 10, 2020, Plaintiff filed a Notice informing this Court that Plaintiff had been intimidated and his family threatened through official actions by the Government of Egypt.  *See* ECF Doc. 11.  The Notice did not seek affirmative relief from this Court at that time.  Plaintiff's counsel mailed a copy of the Notice of Filing to Defendant Beblawi on June 11, 2020.

C.     <u>Plaintiff's Family Members Have Been Arrested and Held Without Warrant and No Charges Have Been Filed</u>

Subsequent to the filing and service of the Notice of Filing, on June 15, 2020, at approximately 1:00 AM in Egypt, five of Plaintiff's family members were arrested and are now being held in unidentified locations without warrants or charges having been filed.  *See* Second Declaration of Plaintiff Mohamed Soltan, dated June 16, 202, attached as Exhibit B.  These arrests were accomplished through coordinated actions of the Egyptian authorities in the cities of Alexandria and Monofeya, cities separated by approximately 150 kilometers.  *Id.* at ¶4.  More than 15 officers took part in the arrests, "all heavily armed with automatic weapons."  *Id.* at ¶11.

The Egyptian authorities first arrived at the home of Plaintiff's uncle in Alexandria, where they entered without a warrant.  After searching the apartment, the authorities arrested two of Plaintiff's cousins without providing a legal basis and inquired into the whereabouts of a third cousin who has now gone into hiding.  *Id.* at 5.  Shortly thereafter, in Monofeya, another three of Plaintiff's cousins were arrested.  The Egyptian authorities questioned Plaintiff's cousins on the street, inspected their cell phones and then placed the three young men into a vehicle and drove away.  *Id.* at 12.

In the early hours of the morning of June 15, 2020, not knowing where Plaintiff's cousins had been taken, Plaintiff's uncle traveled to each of the police stations in the surrounding neighborhoods of the Monofeya Governorate to inquire about Plaintiff's cousins and their whereabouts.  *Id.* at ¶13.  He continued this search for six hours and was eventually told by authorities that Plaintiff's cousins were being held "because of the lawsuit, we know the kids did nothing wrong."  He was then instructed to tell Plaintiff to "drop the lawsuit and they will be released."  *Id.* at ¶13.

Plaintiff's cousins have yet to be released and the family has been told nothing of their whereabouts.   It is clear from the statement of the authorities and the aforementioned circumstances detailed in this filing that Plaintiff's five cousins have been detained in retaliation for the filing of this lawsuit and the recent Notice of Filing.  *Id.* at ¶14.  Plaintiff is terrified of the prospect that his entire extended family is being punished for his attempt to seek justice for the torture he endured.  *Id.* at ¶14.

The intimidation, harassment and arrests in Egypt began immediately after the present suit was served on Defendant Beblawi and the Un-sued Defendants were identified.  After the June 10 Notice of Filing alerted the Court to the first reprisals in Egypt, the authorities escalated their campaign of intimidation moving from raids to arrests.  *Id.*

## II.   LEGAL ARGUMENT

### A.   The Court Has the Inherent Power to Investigate and Manage the Conduct of Litigants

A court possesses the inherent power to manage its own proceedings and in doing so, to ensure that a case in front of it is adjudicated fairly and in an orderly fashion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates…These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.') (*quoting Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962) and *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)).  The court also possesses the inherent power to vindicate its own "dignity and authority." *See Cooke v. United States*, 267 U.S. 517, 534 (1925).  The court may also conduct an independent investigation to ensure that the integrity of the court and the proceedings have not been compromised.  *See Chambers*, 501 U.S.

5

at 44. (*citing Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946) (discussing court's ability to investigate whether judicial integrity was compromised because a judgment was obtained by fraud).

       B.    <u>Plaintiff Has a Good Faith Basis to Believe That that Defendant Beblawi May Have Some Involvement in Misconduct that Threatens to Subvert Justice in These Proceedings</u>

Given the closeness in time between (i) Defendant Beblawi's service with the Complaint and the first series of attacks, as well as (ii) the filing of and Defendant Beblawi's service with the Notice of Filing and the latest series of baseless arrests of his family members, Plaintiff has a good faith basis to believe that it is possible that Defendant Beblawi, the former Egyptian Prime Minister, may be involved in communicating with the security apparatus in Egypt, which has resulted in these attacks on his family. At the very least, given the extreme events that occurred, it is appropriate and necessary that Defendant Beblawi be required to come to a hearing and address whatever knowledge, communications or actions he has taken that could be related to the rights abuses that are ongoing in Egypt in an attempt to chill Plaintiff's rights in this Court.

       C.    <u>Plaintiff Seeks an Emergency Status Conference for the Court to Question Defendant Beblawi About His Possible Involvement in or Knowledge of These Attacks</u>

These acts of intimidation threaten to interfere with the administration of justice in this case. Plaintiff seeks an emergency status conference and requests the Court's assistance to determine the nature and extent of Defendant Beblawi's involvement in or knowledge of these attacks against Plaintiff's family. In the event that Defendant Beblawi is shown to have any such involvement, Plaintiff intends to seek the Court's immediate assistance in taking appropriate action, including but not limited to an order for Defendant Beblawi to show cause as to why he

should not be held in contempt as well as injunctive relief to prevent further action on his part that

may be related to the occurrence of these events.[1]

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order that the parties

appear for an emergency status conference.

DATED:        June 16, 2020                      Respectfully submitted,


                                                 /s/ Eric L. Lewis_____
                                                 Eric L. Lewis (D.C. Bar #394643)
                                                 Waleed Nassar (D.C. Bar #992659)
                                                 Jeffrey D. Robinson (D.C. Bar #376037)
                                                 Aisha E. Bembry (D.C. Bar #4889500)
                                                 LEWIS BAACH KAUFMANN MIDDLEMISS
                                                 PLLC
                                                 1101 New York Ave., N.W, Suite 1000
                                                 Washington, D.C. 20005
                                                 (202) 833- 8900 (voice)
                                                 (202) 466-5738 (facsimile)

                                                 Counsel for Plaintiff Mohamed Soltan

---

[1] The court possesses the inherent power to order a party to show cause. *See Life & Fire Ins. Co. v. Adams*, 34 U.S. 571, 571–72 (1835) (Marshall, C.J.) ("[T]he grant of a rule to show cause and the service thereof, is a matter of discretion of the court."); *NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 851–52 (D.D.C. 1985) ("[I]t is within this Court's inherent discretionary power to issue the [show-cause] order that plaintiffs have requested."); 60 C.J.S. Motions & Orders § 23 (2014) ("Issuance of an order to show cause is a matter within the discretion of the court."); *Owens v. Republic of Sudan*, No. CV 01-2244 (JDB), 2014 WL 12799213, at *2 (D.D.C. Sept. 26, 2014) ("It is, of course, within the Court's discretion to issue a show-cause order."). *See also All Writs Act*, 28 U.S.C. § 1651(a) (1976), the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." When the court becomes aware of or suspects any misbehavior of the parties, the court may "by rule or other process…require the [party] to appear and show cause" why any punishment may or may not be necessary. *Cooke*, 267 U.S. at 534-35. If necessary, the court may utilize its power to punish an unruly party for contempt. *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2020, a copy of Plaintiff Mohamed Soltan's Motion for Emergency

Status Conference, along with supporting papers and a proposed order, was electronically filed with

the Clerk of the Court via the CM/ECF system and sent via U.S. mail first class to the following:

Hazem Abdel Aziz El Beblawi
1601 Clarendon Blvd., Apt. 1503,
Arlington, VA 22209

_____/S/_____
Eric L. Lewis D.C. Bar#394643