# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

MOHAMED SOLTAN,

        Plaintiff,

    v.

HAZEM ABDEL AZIZ EL BEBLAWI,

        Defendant.

Civil Action No.: 20-cv-01437 (CKK)

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
EXTENSION OF TIME TO FILE RESPONSIVE PLEADING**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION     1

ARGUMENT     2

**I.**     Plaintiff Ignores The Significant Separation of Powers Issues Implicated by This Motion and The Complaint.     2

**II.**     Briefing on a Reasonable Schedule Will Establish There is No Present Subject Matter Jurisdiction     3

       **A.**     Diplomatic Immunity     3

       **B.**     Foreign Official Immunity     5

**III.**     Briefing on a Reasonable Schedule Will Establish There Is No Personal Jurisdiction.     6

**IV.**     A Sixty-Day Extension Is Proper Given The Complexity of Legal Issues Implicating Foreign Affairs Raised By The Complaint.     8

**V.**     Plaintiff's Accusations Against the Egyptian Government Are No Reason to Deny an Extension or to Not Establish a Briefing Schedule     9

**CONCLUSION**     11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulaziz v. Metro. Dade Cty.*,
    741 F.2d 1328 (11th Cir. 1984) .............................................................................5

*Ahanchian v. Xenon Pictures, Inc.*,
    624 F.3d 1253 (9th Cir. 2010) ..............................................................................9

*Aidi v. Yaron*,
    672 F. Supp. 516 (D.D.C. 1987) ...........................................................................3

*Arcaya v. Paez*,
    145 F. Supp. 464 (S.D.N.Y. 1956), *aff'd*, 244 F.2d 958 (2d Cir. 1957) ..............4, 5

*Belhas v. Ya'alon*
    515 F.3d 1279 (D.C. Cir. 2008) ........................................................................6, 10

*Ben-Haim v. Avraham*,
    No. 2:15-cv-6669 (D.N.J.) ...................................................................................8

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017) .........................................................................................6

*Broidy Capital Mgmt. LLC v. Benomar*,
    944 F.3d 436 (2d Cir. 2019) .................................................................................3

*Carrera v. Carrera*,
    174 F.2d 496 (D.C. Cir. 1949) .............................................................................3

*U.S. ex rel. Casanova v. Fitzpatrick*,
    214 F. Supp. 425 (S.D.N.Y. 1963) .......................................................................4

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ...............................................................................................8

*Collingsworth v. Drummond Co. Inc.*,
    2020 WL 2800612 (D.D.C. May 29, 2020) .........................................................7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .............................................................................................7

*Devi v. Silva*,
    861 F. Supp. 2d 135 (S.D.N.Y. 2012) ..................................................................4

*Diallo v. Strauss-Kahn*,
No. 307065/11, 2012 WL 1533179 (N.Y. Sup. Ct. May 01, 2012)...........................................4

*Doe 1 v. Buratai*,
318 F. Supp. 3d 218 (D.D.C. 2018), *aff'd*, 2019 WL 668339 (
D.C. Cir. Feb. 15, 2019)..................................................................................................2, 3

*Doe v. Buratai*,
792 F. App'x 6 (D.C. Cir. 2019) .......................................................................................2, 3

*Doe v. Drummond Co.*,
782 F.3d 576 (11th Cir. 2015) ...............................................................................................7

*Dogan v. Barak*,
932 F.3d 888 (9th Cir. 2019) .................................................................................................6

*Eisel v. Sec. of the Army*,
477 F.2d 1251 (D.C. Cir. 1973) ............................................................................................7

*Giraldo v. Drummond Co.*,
2012 WL 2358306 (N.D. Ala. June 20, 2012), *aff'd sub nom* .................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...............................................................................................................7

*Hellenic Lines, Ltd. v. Moore*,
345 F.2d 978 (D.C. Cir. 1965) ..............................................................................................3

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)................................................................................................................8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
Amministrazione Straordinaria*,
937 F.2d 44 (2d Cir. 1991)....................................................................................................7

*Lewis v. Mutond*,
No. 1:16-cv-1547, 918 F.3d 142 (D.C. 2019)...............................................................5, 8, 9

*Livnat v. Palestinian Auth.*,
82 F. Supp. 3d 19 (D.D.C. 2015) (Kollar-Kotelly, J.) *aff'd*, 851 F.3d 45 (D.C.
Cir. 2017) ......................................................................................................................6, 7, 8

*Matar v. Dichter*
563 F.3d 9 (2d Cir. 2009).......................................................................................................6

*Mutond v. Lewis*,
No. 19-185 (2020)............................................................................................................2, 5, 6

*Nuevos Destinos, LLC v. Peck,*
 2019 WL 78780 (D.D.C. Jan. 2, 2019)......................................................................7

*Republic of Mexico v. Hoffmann,*
 324 U.S. 30 (1945).......................................................................................................3

*Ex parte Republic of Peru,*
 318 U.S. 578 (1943).....................................................................................................3

*Roadway Exp., Inc. v. Piper,*
 447 U.S. 752 (1980).....................................................................................................8

*Samantar v. Yousuf,*
 560 U.S. 305 (2010).....................................................................................................3

*Sikhs for Justice v. Nath,*
 893 F.Supp.2d 598 (SDNY 2012)..............................................................................10

*Singh v. G.k.,*
 2016 WL 3181149 (S.D.N.Y. June 2, 2016) ..............................................................7

*Spacil v. Crowe,*
 489 F.2d 614 (5th Cir. 1974) ......................................................................................2

*In re Terrorist Attacks on Sept. 11, 2001,*
 714 F.3d 659 (2d Cir. 2013)........................................................................................7

*United States v. Williams,*
 825 F. Supp. 2d 117 (D.D.C. 2011) ...........................................................................7

**Statutes**

22 U.S.C. §§ 254a *et seq.*...............................................................................................3

22 U.S.C. § 254d.........................................................................................................3, 4

28 U.S.C. § 1608(d) ........................................................................................................8

28 USC § 1350................................................................................................................6

VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227..........................................................3

**Rules**

Fed. R. Civ. P. 6(b)(1)....................................................................................................9

## INTRODUCTION

This motion should not have been necessary.  Plaintiff in his Opposition is "not opposed to a reasonable amount of additional time" for a response to the Complaint.  Dkt. 21, p. 6. A reasonable extension in complex cases involving foreign relations is 60 days for a response.  We had proposed 30 days for an opposition as a courtesy to opposing counsel given the number of legal issues this case raises, and an appropriate period for a reply.  At no time did counsel for the Defendant condition the proposed briefing schedule on Plaintiff withdrawing his extraordinary application for what is effectively an order to show cause to examine a defendant at the outset of proceedings who is asserting substantial unresolved immunities and jurisdictional objections.  We have and would oppose that application anyway.

The "reason alone" that Plaintiff would not agree to a normative briefing schedule is the possible delay this may cause into an "inquiry" from the Court about supposed intimidation when no evidence of the same is provided.  Dkt. 21, p. 1. Plaintiff has provided no facts showing Mr. Beblawi has been engaged in any conduct detrimental to anyone.  He would like to shortcut the complex personal, diplomatic and official immunity jurisdiction issues this case raises, by haling the Defendant into Court solely on the basis of Plaintiff's declarations.

Plaintiff is wrong that Defendant "concedes" that no immunity presently exists until the United States further says so.  Simply, time is needed, which will assist the Court, so as to confirm immunity via a Diplomatic Note from the Arab Republic of Egypt ("Egypt") and for the United States to issue a Suggestion of Immunity.[1]  Defendant's motion should be granted.

---

[1]    Attached to the accompanying Supplemental Declaration of Timothy M. Broas is a further note from the Egyptian Embassy issued June 23, 2020 to the United States State Department, introducing the undersigned counsel and advising that "A detailed diplomatic note will soon be dispatched to the State Department respectfully requesting the United States of America to recognize the immunities from suit in respect to Mr El Beblawi." Broas Decl. ¶ 2, Ex. A.  Attached as Exhibit B is the Diplomatic Note issued by Egyptian Embassy to the State Department today, June 24, 2020 officially requesting a suggestion of immunity from the United States. Broas Decl. ¶ 3, Ex. B.  Due speed to commence the process of confirming Mr. Beblawi's immunities with the United States government is evident in this record.

**ARGUMENT**

I.     **Plaintiff Ignores The Significant Separation of Powers Issues Implicated by This Motion and The Complaint.**

Plaintiff concedes, as he must, that the Court should defer to the Executive Branch's position on immunity. S*ee* Dkt. 20 p. 4. Yet his briefing is conspicuously silent concerning the separation of powers issues implicated by both the Complaint and his request that the Court call in a diplomatic agent for questioning to "investigate" the agent's communications with his home country.

Denying the motion for extension and granting Plaintiff's emergency motion would realize the concern the United States government expressed in its *amicus* brief supporting certiorari in the *Mutond* case: District of Columbia courts will be called upon to hastily adjudicate questions of "foreign military or policy decisions," which "could invite similar treatment of this Nation's officials" abroad, and "could seriously interfere with the Executive Branch's conduct of foreign relations."  *Mutond v. Lewis*, No. 19-185 (2020), May 26, 2020 Brief Amicus Curiae of United States p. 8. Indeed, granting Plaintiff's motion would encourage private actors involved in foreign-state conflicts to file suit against current and former foreign officials, and then implore the courts to engage on the merits of a claim before the Executive Branch has an opportunity to intervene.

Before this Court asserts jurisdiction over Mr. Beblawi, the Executive Branch must be given a meaningful opportunity to state its position as "[s]eparation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy." *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974).

When presented with a complaint raising significant questions of foreign affairs, this Court has acknowledged the importance of deferring to (and waiting for) the Executive Branch to respond to requests for suggestions of immunity. *See, e.g., Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 238 (D.D.C. 2018), *aff'd*, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019), and *aff'd,* 792 F. App'x 6 (D.C. Cir. 2019). *Burartai* involved a TVPA action arising from intra-Nigerian conflict between the Nigerian government and Biafran people. *Id.* Judge Dabney L. Friedrich acknowledged the importance of suggestions of immunity in *Burartai*, and gave the State Department over a year to respond to a formal request before eventually dismissing the action for lack of personal and subject

matter jurisdiction.[2] *Id.* at 239.

Mr. Beblawi and the Egyptian government are going through the proper channels to provide this Court with a formal suggestion of immunity. *See, e.g.*, Broas Decl. ¶¶ 2, 3, Exs. A, B. Far from trying to "drum up support for his claim of immunity" (*see* Dkt. 20, p. 6), Mr. Beblawi is simply complying with the administrative procedures necessary to supply this Court with critical and conclusive evidence of his existing immunity. *See Republic of Mexico v. Hoffmann*, 324 U.S. 30, 35 (1945); *Ex parte Republic of Peru*, 318 U.S. 578, 588–89 (1943); *Samantar v. Yousuf*, 560 U.S. 305, 310-312, 324, 560 U.S. at 310-12 (2010). The Court should provide Mr. Beblawi a reasonable extension of time to do so before taking action that would contravene the significant separation-of-powers issues at play.

## II. Briefing on a Reasonable Schedule Will Establish There is No Present Subject Matter Jurisdiction.

### A. Diplomatic Immunity

Mr. Beblawi is entitled to diplomatic immunity pursuant to the Diplomatic Relations Act of 1978 ("DRA") and the Vienna Convention on Diplomatic Relations ("VCDR"). *See* 22 U.S.C. § 254d; VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227.

The DRA incorporated the VCDR into federal law and repealed contradictory legislation. *See* 22 U.S.C. §§ 254a *et seq.*; *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 442–43 (2d Cir. 2019). Under the VCDR, diplomatic agents are immune from a receiving state's civil and administrative jurisdiction. VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227; *see also Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949) (affirming dismissal and holding that joining a diplomatic agent as a defendant would violate diplomatic immunity); *Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980–81 (D.C. Cir. 1965) (affirming dismissal and "conclude[ing] that the purposes of

---

[2] In *Burartai* it appears the State Department did not respond to the request for a suggestion of immunity, and, on appeal, the D.C. Circuit affirmed dismissal based on personal jurisdiction and it did not reach the question of subject matter jurisdiction. *See Doe v. Buratai*, 792 F. App'x 6, 8 (D.C. Cir. 2019). Mr. Beblawi is eager to have the Complaint dismissed and does not suggest that the Court wait a year to adjudicate the forthcoming motion to dismiss. Rather, Mr. Beblawi requests a reasonable extension of time to ensure full briefing on complex issues and adequate time for the Executive Branch to state its position.

diplomatic immunity forbid service" on a foreign diplomat); *Aidi v. Yaron*, 672 F. Supp. 516, 518 (D.D.C. 1987) ("[T]his case merely declares the rather obvious point that if a diplomat is immune from suit he or she is equally immune from service of process").

While the DRA neither alters nor augments the VCDR, it does clarify available procedures for establishing and asserting diplomatic immunity: "immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure." 22 U.S.C. § 254d. While a formal suggestion of immunity is a common and conclusive mechanism to establish diplomatic immunity, it is not the sole avenue to do so. 22 U.S.C. § 254d; *see also Devi v. Silva*, 861 F. Supp. 2d 135, 140–41 (S.D.N.Y. 2012) (recognizing that "there is no rule requiring a filing in the case by the United States Government," and that "where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity").

Here, the weight of evidence before the Court demonstrates diplomatic immunity. Mr. Beblawi has submitted his G-1 Diplomatic Visa, an official letter from the Ambassador of the Arab Republic of Egypt to the United States government confirming his status as a diplomatic agent, and two Diplomatic Notes from the Egyptian Embassy to the United States government concerning Mr. Beblawi's diplomatic status and requesting that the United States government confirm such status to this Court. Dkt. 19-1, Ex. A, B; Broas Decl., ¶¶ 2, 3, Ex. A, B.

Plaintiff misconstrues Mr. Beblawi's immunity claim as being premised exclusively on, or derived solely, from his diplomatic visa and/or his position at the IMF.[3] *See* Dkt. 20, pp. 5-6. This is simply not true, and is patently refuted by the official correspondence by the Egyptian government.

---

[3] Plaintiff cites to the inapposite cases of *U.S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425 (S.D.N.Y. 1963) and *Diallo v. Strauss-Kahn*, No. 307065/11, 2012 WL 1533179 (N.Y. Sup. Ct. May 01, 2012) to argue that a G-1 visa and IMF position do not confer diplomatic immunity. The Court need not labor long on such cases. In *Fitzpatrick*, the United States government actively *opposed* the diplomatic immunity claim, which was premised on Section 15(2) of the Headquarters Agreement. 214 F. Supp. at 432. Here, the United States government has not disputed Mr. Beblawi's claim of immunity; rather, it has not even been given the chance to affirm it. Moreover, Section 15(2) of the Headquarters Agreement is not presently at issue. Similarly in *Diallo*, IMF Managing Director Dominic Strauss-Kahn, asserted immunity under the Convention on the Privileges and Immunities of the Specialized Agencies, to which the United States is not a signatory. No. 307065/11, 2012 WL 1533179 at *3 (N.Y. Sup. Ct. May 01, 2012). That framework is not presently at issue.

Moreover, in contrast to the *Arcaya* case upon which Plaintiff relies (*see* Dkt. 20, p. 4), Plaintiff has presented zero evidence suggesting Mr. Beblawi does not hold diplomatic immunity. *Arcaya v. Paez*, 145 F. Supp. 464 (S.D.N.Y. 1956), *aff'd*, 244 F.2d 958 (2d Cir. 1957). In *Arcaya*, the defendant requested a suggestion of immunity, and the State Department submitted the request but affirmatively declined to comment thereon. *Id*. at 469-70. Based on this evidence, the Court proceeded to adjudicate the question of immunity, ultimately staying the action based on immunity derived from defendant's position with the United Nations.[4] *Id.* at 472. Distinct from *Arcaya*, here, all evidence demonstrates that Mr. Beblawi currently holds diplomatic immunity. Should the Court require additional evidence of Mr. Beblawi's diplomatic status, Mr. Beblawi respectfully requests that the Court grant his request for extension.

### B.      Foreign Official Immunity

Plaintiff is incorrect in asserting that the current circuit law in *Lewis v. Mutond,* 918 F.3d 142 (D.C. 2019) resolves—without a 12(b) motion or statement from the United States—the complex issue of foreign official immunity.  Dkt. 20 pp. 7-8. Rather, The United States has urged the Supreme Court to grant certiorari in *Mutond*, anticipating lawsuits like the present, and warning of their consequences:

> If left undisturbed, the decision below could open the District Court for the District of Columbia to suits challenging a variety of foreign military or policy decisions, could invite similar treatment of this Nation's officials by other states, and could seriously interfere with the Executive Branch's conduct of foreign relations.[5]

In any event, the circuit decision in *Mutond*, even if undisturbed, is not jurisdictionally

---

[4] The *Arcaya* decision reflects analysis of a treaty framework not here at issue and which has changed since the decision was issued 64 years ago. Moreover, the *Arcaya* court's decision to stay rather than dismiss the action after immunity was obtained runs counter to the Eleventh Circuit's decision in *Abdulaziz v. Metro. Dade Cty.*, 741 F.2d 1328, 1329-30 (11th Cir. 1984), which held that "diplomatic immunity flowing from [diplomatic] status serves as a defense to suits already commenced." Importantly, however, unlike the present case, the United States government confirmed the absence of diplomatic immunity in *Abdulazizi* before the case commenced; immunity was conferred during case pendency; and the court timely dismissed thereafter. *See Abdulaziz*, 741 F.2d at 1332.

[5] *Mutond v. Lewis*, No. 19-185 (2020), May 26, 2020 Brief Amicus Curiae of United States p. 8.

dispositive for the Rule 12 motions to follow on a full record: (i) there is no personal jurisdiction over Mr. Beblawi; (ii) there is no subject matter jurisdiction as Mr. Beblawi has diplomatic immunity, (iii) in the event the United States issues a suggestion of immunity in this case—not present in *Mutond*—then this will be dispositive of the jurisdiction question as the Supreme Court has held in *Samantar,* 560 U.S. at 311, (iv) the Act of State doctrine bars this suit; and (v) the case presents non-justiciable political questions.  Nor is the issue of a *jus cogens* exception to conduct-based foreign immunity settled in the manner Plaintiff preemptively argues at p. 7 of his Opposition. *Belhas v. Ya'alon* 515 F.3d 1279, 1286 (D.C. Cir. 2008);  *Dogan v. Barak,* 932 F.3d 888, 896 (9th Cir. 2019); *Matar v. Dichter* 563 F.3d 9, 14 (2d Cir. 2009).  In any event, the Court may wish to defer ruling on pleading challenges in this case until the status of the D.C. Circuit's *Mutond* decision is made clear.[6]

### III.   Briefing on a Reasonable Schedule Will Establish There Is No Personal Jurisdiction.

Plaintiff's Complaint asserts "personal jurisdiction over Defendant Beblawi based on his numerous, systematic and regular contacts with the District of Columbia" in that "[h]e is currently employed as an Executive Director with the International Monetary Fund within the District of Columbia." Complaint ¶ 10.  This is insufficient for general or specific personal jurisdiction over Mr. Beblawi as an individual.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017).

When personal jurisdiction is challenged, "the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant." *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 24 (D.D.C. 2015) (Kollar-Kotelly, J.) *aff'd*, 851 F.3d 45 (D.C. Cir. 2017).  "A court with general jurisdiction may hear *any* claim against the defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780

---

[6]    In addition, an extension to file a responsive pleading is needed to evaluate and advance pleading challenges under Rule 12(b)(6) at the time of the 12(b)(1) and (2) motions, including as to the Complaint's second claim for relief because "attempted" extrajudicial killing is not an action expressly redressable by the Torture Victims Protection Act at Note, 28 USC § 1350 ("TVPA"), as well as the alleged secondary liability (see Complaint  ¶ 151), which is also not expressly covered by the TVPA. *Id.*, § IV.B.

(emphasis in original). "Specific jurisdiction is very different." *Id.* For such jurisdiction to exist, "the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (quotation omitted) (emphasis and alterations in original). This requires "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum . . . and is therefore subject to the [forum's] regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Mr. Beblawi maintains a residence in this district for the purpose of engaging in IMF-related work that should not factor into the personal jurisdiction analysis.[7] Critically, "general" or "all-purpose jurisdiction" over an individual is limited to "the individual's domicile." *Goodyear*, 564 U.S. at 924; *accord Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).[8] Mr. Beblawi's domicile is Cairo, Egypt.

As this Court has recognized, principles of general jurisdiction apply where, as here, a U.S. plaintiff asks a federal court to exercise jurisdiction over a foreign defendant for conduct that occurred outside the forum state. *Livnat*, 82 F. Supp. 3d at 25. *See also Nuevos Destinos, LLC v. Peck*, 2019 WL 78780, *6 (D.D.C. Jan. 2, 2019) (citing *Livnat*, 82 F. Supp. 3d at 30 (D.D.C. Jan. 2, 2019) ("various connections to a jurisdiction" are insufficient if the foreign defendant is not "*at home* in the United States").

TVPA cases recognize the domicile limitation for asserting general personal jurisdiction over individual foreign defendants. *See Daimler AG v. Bauman*, 571 U.S. (2014); *Singh v. G.k.*, 2016 WL 3181149, at *3 (S.D.N.Y. June 2, 2016); *Giraldo v. Drummond Co.*, 2012 WL 2358306, at *7 (N.D. Ala. June 20, 2012), *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015);

---

[7]   *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 51 (2d Cir. 1991).

[8]   "[R]esidence is '[t]he act or fact of living in a given place for some time, while domicile is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.'" *United States v. Williams*, 825 F. Supp. 2d 117, 124 (D.D.C. 2011) As such, "[a]n individual consequently may have several residences, but only one domicile." *Id.* at 124–25). Thus, "a person has been able to have only one domicile." *Eisel v. Sec. of the Army*, 477 F.2d 1251, 1265 (D.C. Cir. 1973).

*Collingsworth v. Drummond Co. Inc.*, 2020 WL 2800612, at *6 (D.D.C. May 29, 2020); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).

Nor does specific jurisdiction apply here, since specific jurisdiction requires an "affiliation between the forum and the underlying controversy." *Livnat v. Palestinian Auth.*, 851 F.3d at 56. There are no allegations in the Complaint concerning activities in this forum, other than the non-domicile temporary residence of the Defendant—which is insufficient.

These jurisdictional issues should be evaluated on a full Rule 12 record that is not shortcut by requests for pre-hearing interrogation.

### IV.   A Sixty-Day Extension Is Proper Given The Complexity of Legal Issues Implicating Foreign Affairs Raised By The Complaint.

Plaintiff's objection to Mr. Beblawi's request for a reasonable, 60-day extension belies the true motive underlying this lawsuit and the pending emergency motion: Plaintiff hopes this Court will wade into foreign affairs reserved for the Executive Branch, adjudicate the merits of claims against the Egyptian government, and interfere with diplomatic communications. For the reasons stated above and in Mr. Beblawi's opposition to the motion for emergency status order (*see* Dkt. 19), this Court should summarily decline to do so.[9]

The briefing schedule previously submitted to the Court is reasonable and aligns with similarly situated cases. Plaintiff's attempt to distinguish from those cases falls flat.[10] Further,

---

[9] Plaintiff's arguments concerning the Court's inherent authority remain unavailing as, in each case upon which Plaintiff relies, the Court was exercising authority over litigants properly before it. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) and *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980). Here, Plaintiff is not asking that the Court "manage [its] own affairs," as in *Chambers*, he is asking the Court compel to party over whom it lacks jurisdiction to appear before it. And Plaintiff does not stop there. Rather, he is asking that the Court assert control over affairs of a foreign sovereign on foreign soil. The Court simply does not have authority to do so. *See, e.g., Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115-17 (2013) (recognizing a presumption against extending jurisdiction under the Alien Tort Claims Act to conduct occurring on foreign soil "to protect against unintended clashes between our laws and those of other nations which could result in international discord" and because "United States law governs domestically but does not rule the world").

[10] In both *Lewis v. Mutond*, No. 1:16-cv-1547 (D.D.C.) and *Ben-Haim v. Avraham*, No. 2:15-cv-6669 (D.N.J.), the Court granted the motion for a 60-day extension "for good cause shown." *Lewis v. Mutond*, No. 1:16-cv-1547 (D.D.C.), Dkt. 12, p. 1; *Ben-Haim v. Avraham*, No. 2:15-cv-6669 (D.N.J.), Dkt. 13, p. 1. While the Court acknowledged the plaintiff's consent to the reasonable extension, the good cause shown was premised on the very same jurisdictional, immunity,y and

Plaintiff's discussion of 28 U.S.C. § 1608(d) misses the mark. Mr. Beblawi does not argue that the statute governs. Rather, he is simply pointing out that the requested 60-day extension is consistent with the 60-day deadline provided to foreign states, which is presumably offered due to the complex foreign affairs and immunity issues implicated in such cases, among other reasons. A similar argument was made in the *Lewis v. Mutond* motion for extension, which this Court granted. *See Lewis v. Mutond*, No. 1:16-cv-1547 (D.D.C), Dkt. 11, p. 3.

As Mr. Beblawi has shown good cause supporting the requested extension, and as Plaintiff has failed to rebut the same, the Court should grant Mr. Beblawi's motion and adopt the recommended briefing schedule. *See* Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time"); *see also Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (acknowledging that "'[g]ood cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts" and that Rule 6(b)(1) should "be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits") (citations omitted).

## V. Plaintiff's Accusations Against the Egyptian Government Are No Reason to Deny an Extension or to Not Establish a Briefing Schedule.

There is zero evidence before the Court of any sinister assumed communications from the Defendant that would affect a briefing schedule or provide a basis to examine the Defendant with respect to his alleged "knowledge and communications about events in Egypt." Dkt. 21, p. 2.  The "good faith" basis for the allegation that Mr. Beblawi is directing events in a foreign country, six years after he was Prime Minister, is a cite to a 2014 media report.  Dkt. 21, p. 4, fn. 1.  In suggesting without evidence that actions in Egypt were engendered by the Defendant "days after service of the Complaint" (*id*. at p. 3), Plaintiff requests a fishing expedition launched against a former head of state on an assumption that ignores the actual facts.

Rather, on June 1, 2020, Mr. Soltan filed a Complaint naming not only Mr. Beblawi, but five other current Egyptian officials as "un-sued Defendants": President Abdel Fattah el-Sisi; Abbas

---

foreign-affairs issues implicated in these cases. *See Lewis v. Mutond*, No. 1:16-cv-1547 (D.D.C.), Dkt. 11, p. 3; *Ben-Haim v. Avraham*, No. 2:15-cv-6669 (D.N.J.), Dkt. 10 at 3.

Kamel, the Director of Egypt's General Intelligence Service; Mohamed Ibrahim Mustafa, the former Egyptian Minister of the Interior; Mahmoud Sayed Abdel Hamid Sha'rawi, Egypt's Minister of Local Development; and Tamer Al-Fergany, Egypt's former Attorney General and current Head of the Anti-Corruption Authority. Complaint ¶ 2.  Mr. Soltan explicitly threatens in the Complaint that if "one or more of them . . . visit the United States" Plaintiff will attempt "to serve them with process" and if successful, "will add them to the lawsuit as formal defendants." *Id.* ¶ 3.

These allegations sensationalized and further politicized this case.  And Plaintiff then took steps to publicize his lawsuit in press statements, interviews and via a website—independent of the asserted service on Mr. Beblawi on June 3, 2019 described at Dkt. 8.[11]   The interviews and press statements in these articles from Plaintiff were open and notorious.[12] There is no reason to think any of the unproven events in Egypt that allegedly followed were caused by the Defendant, who responsibly believes that immunity from suit shields him from examination and discovery at this stage.[13]

---

[11]   *See, e.g.*, Ruth Michaelson, *US Activist Sues Former Egyptian Prime Minister over Arrest and Torture*, GUARDIAN (June 1, 2020, 3:30 PM), https://www.theguardian.com/world/2020/jun/01/us-activist-sues-torture-egypt-mohamed-soltan-hazem-abdel-aziz-el-beblawi; Umar A. Farooq, *US Activist Sues Former Egyptian Prime Minister over Arrest and Torture*, MIDDLE E. EYE (June 1, 2020, 4:50 PM), https://www.middleeasteye.net/news/mohamed-soltan-files-lawsuit-former-egypt-pm-hazem-al-beblawi-us-court; *Egypt's Ex-PM Faces Torture Allegation in American's Lawsuit*, VOICE OF AM. (June 2, 2020, 8:44 AM), https://www.voanews.com/usa/egypts-ex-pm-faces-torture-allegation-americans-lawsuit; Brad Kutner, *US Citizen Detained in Egypt Nearly Two Years Sues Over Torture*, COURTHOUSE NEWS SERV. (June 1, 2020), https://www.courthousenews.com/us-citizen-detained-in-egypt-nearly-two-years-sues-over-torture/; *Eric L. Lewis*, LEWIS BAACH KAUFMANN MIDDLEMISS PLLC, http://www.lbkmlaw.com/attorneys-Eric-Lewis.html#News (last visited June 24, 2020).

[12] In Plaintiff's June 22 Declaration, Dkt. 20-1, ¶¶ 4-5, Plaintiff proffers hearsay about his father's condition as an inmate in Egypt.  Notably, Plaintiff acknowledges that his father has been "held as a political prisoner since 2013," seven years before this litigation commenced.  Plaintiff's father is reported to be "ideologically affiliated with the Muslim Brotherhood" (https://en.wikipedia.org/wiki/Mohamed_Soltan), which Egypt has designated as a terrorist organization. Shadia Nasralla (December 25, 2013). "Egypt designates Muslim Brotherhood as terrorist group". Reuters.

[13]   *See, e.g. Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 609-612 (SDNY 2012) [denying jurisdictional discovery in TVPA case]; *Belhas v. Ya'alon*, 515 F.3d at 1290-1291.  [same].

## CONCLUSION

For the above reasons and those presented in the Motion at Dkt. 13, the Court should enter the Proposed Order on a briefing schedule submitted by Mr. Beblawi.

Respectfully submitted,

Dated:  June 24, 2020

/s/ Timothy M. Broas

TIMOTHY M. BROAS (D.C. Bar #391145)
RACHEL A. BECK (D.C. Bar #1029929)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW Suite 700
Washington, DC  20004
Tel.: (202) 508-6000
Email: timothy.broas@bclplaw.com
        rachel.beck@bclplaw.com

/s/ Robert H. Bunzel

ROBERT H. BUNZEL (*pro hac vice*)
LOUISE ANN FERNANDEZ (*pro hac vice*)
JOHN J. BARTKO (*pro hac vice*)
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center Suite 800
San Francisco, CA 94111
Tel: (415) 956-1900
Email: rbunzel@bzbm.com
        lfernandez@bzbm.com
        jbartko@bzbm.com

*Attorneys for Hazem Abdel Azis El Beblawi*