# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MOHAMED SOLTAN,

        Plaintiff,

    v.

HAZEM ABDEL AZIZ EL BEBLAWI,

        Defendant.

Civil Action No.: 20-cv-01437 (CKK)

## DEFENDANT HAZEM ABDEL AZIZ EL BEBLAWI'S
## MOTION TO QUASH SERVICE OF PROCESS

Pursuant to the Diplomatic Relations Act of 1978 ("DRA") and the Vienna Convention on Diplomatic Relations ("VCDR"), Defendant Hazem Abdel Aziz El Beblawi ("Defendant" or "Mr. Beblawi") respectfully moves the Court to quash the service of process in this civil action and dismiss the Complaint of Plaintiff Soltan Mohamed ("Plaintiff" or "Mr. Soltan").[1] *See* 22 U.S.C. § 254d; VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227.

In support of this motion, Mr. Beblawi states as follows:

1.      Mr. Beblawi is an Egyptian citizen and diplomatic agent. *See* Dkt. 12; Dkt. 12-1; Dkt. 19; Dkt. 19-1, Exs. A, B; Dkt. 21; Dkt 22-1, Exs. A, B. He currently serves as an Executive Director of the International Monetary Fund ("IMF"), responsible for votes cast by Bahrain, Egypt, Iraq, Jordan, Kuwait, Lebanon, Maldives, Oman, Qatar, United Arab Emirates, and

---

[1] Mr. Beblawi submits this motion, along with the concurrently-file motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), out of an abundance of caution as this Court has not yet ruled on his motion for extension of time to file a responsive pleading. *See* Dkt. 13. Should the Court grant the pending motion for extension, Mr. Beblawi will submit further briefing in support of the arguments set forth herein and in the concurrently-filed motion to dismiss.

Yemen.[2] In connection with his appointment in the United States for this work, Mr. Beblawi holds a G-1 Diplomatic Visa issued by the United States government. Dkt. 19-1, Ex. A.

2.      Mr. Beblawi previously served as the interim Prime Minister of Egypt from July 9, 2013 until March 1, 2014. Compl. ¶ 14. Plaintiff's lawsuit, filed June 1, 2020, contends that during this time a number of current and former Egyptian officials, including Mr. Beblawi, committed tortious acts in their governmental capacities that caused Plaintiff harm.[3] Compl. ¶¶ 2, 14. According to an affidavit of service previously filed with this Court, Plaintiff alleges that service of process was provided to Mr. Beblawi on June 3, 2020. *See* Dkt. 9.

3.      The Egyptian government has confirmed Mr. Beblawi's status as a diplomatic agent, and has officially requested that the United States State Department issue a suggestion of immunity affirming the same. *See* Dkt 19-1, Ex. A; Dkt 22-1, Exs. A, B.

4.      On June 21, 2020, the Egyptian government sent a letter to the United States government expressly confirming that Mr. Beblawi is "a diplomat of the Arab Republic of Egypt" and that he holds "immunity from suit, not only by virtue of his current diplomatic status, but also personal immunity due to his official position of Prime Minister of Egypt at the time of the events cited." Dkt 19-1, Ex. B.

5.      On June 23, 2020, the Egyptian Embassy issued Diplomatic Note 0077-2020 to the United States State Department, introducing the undersigned counsel and advising that "A detailed diplomatic note will soon be dispatched to the State Department respectfully requesting

---

[2] *See* IMF Executive Directors and Voting Power, last visited June 21, 2020, and available at: https://www.imf.org/external/np/sec/memdir/eds.aspx .

[3] Mr. Beblawi disputes the veracity of Plaintiff's allegations, which, as to Mr. Beblawi, are primarily asserted upon information and belief. *See, e.g.*, Comp. ¶¶ 36, 38, 41, 49, 54, 70, 85, 122 and 138.

the United States of America to recognize the immunities from suit in respect to Mr El Beblawi." Dkt. 22-1, Ex. A.

6.      On June 24, 2020, the Egyptian Embassy issued Diplomatic Note 0078-2020 to the State Department, in which the Egyptian government officially requested a suggestion of immunity from the United States be issued to this Court. Dkt 22-1, Ex. B.

7.      As evidenced by the foregoing, Mr. Beblawi is a diplomatic agent entitled to diplomatic immunity under the DRA and VCDR. *See* VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227; 22 U.S.C. § 254d.

8.      The DRA "establishes the privileges and immunities provisions of the [VCDR] as the essential United States law on the subject." Diplomatic Relations Act, H.R. 7819 (statement of President Carter signing into law on Oct. 2, 1978); *see also* PL 95–393 (HR 7819), PL 95–393, SEPTEMBER 30, 1978, 92 Stat 808. While the DRA neither alters nor augments the VCDR, it does clarify available procedures for establishing and asserting diplomatic immunity: "immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure." 22 U.S.C. § 254d. A common and conclusive mechanism to establish diplomatic immunity under the DRA is through a suggestion of immunity submitted by the State Department. *See Zdravkovich v. Consul Gen. of Yugoslavia*, No. 98-7034, 1998 WL 389086, at *1 (D.C. Cir. June 23, 1998); *Carrera*, 174 F.2d at 497 (D.C. Cir. 1949).

9.      A formal suggestion of immunity, however, is not the *sole* way to establish diplomatic immunity. *See* 22 U.S.C. § 254d. Section 254d explicitly allows an individual to establish diplomatic immunity by filing a motion or suggestion of immunity on his own behalf, or "as otherwise permitted by law or applicable rules of procedure." *Id*. Federal courts have

found that "there is no rule requiring a filing in the case by the United States Government," and that "where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity by the United States." *Devi v. Silva*, 861 F. Supp. 2d 135, 140–41 (S.D.N.Y. 2012).[4]

10.     Here, the weight of evidence clearly establishes that Mr. Beblawi is a diplomatic agent entitled to diplomatic immunity. Mr. Beblawi has submitted into evidence his G-1 Diplomatic Visa along with three items of official correspondence from the Egyptian government. *See* Dkt 19-1, Ex. A; Dkt 22-1, Exs. A, B.

11.     Mr. Beblawi's G-1 Diplomatic Visa supports his diplomatic immunity claim because it corroborates his status as a diplomat while within the United States. *See*  8 U.S.C.A. § 1101(a)(11) (West) (defining "diplomatic visa" to mean a "nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe"); 22 C.F.R. § 41.12 (confirming "G-1" designation reflects status as "designated principal resident representative of a foreign government recognized de jure by the United States"). Indeed, to issue the diplomatic visa, which is reflected by a "D," the United States government had to confirm that Mr. Beblawi not only had a diplomatic passport, but also that he fell within an enumerated class eligible for receipt of a diplomatic G-1 visa, as opposed to a

---

[4]     Plaintiff may cite to the now-reversed opinion of *Jungquist v. Nahyan*, 940 F. Supp. 312, 321-22 (D.D.C. 1996) to suggest that dismissal under § 254d requires evidence from the State Department. In *Jungquist*, the District Court denied a motion to dismiss an action against two defendants, finding that immunity under the Foreign Sovereign Immunities Act ("FSIA") did not apply and that the Court lacked evidence that the State Department considered the defendants diplomatic agents. *Jungquist*, 940 F. Supp. at 321-22 (D.D.C. 1996). The D.C. Circuit reversed, finding that the defendants were entitled to FSIA immunity and that it therefore need not reach the diplomatic immunity claim. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997). Had the Circuit Court reached the diplomatic immunity claim, it would have confronted the plain language of § 254d, which expressly allows an individual to establish diplomatic immunity on his own.

regular (or, "R") type visa. *See* 22 C.F.R. § 41.26(c)(1).[5] The diplomatic visa therefore supports

Mr. Beblawi's immunity claim.

12.     The Egyptian Ambassador's June 21, 2020 letter provides further evidence of

Mr. Beblawi's diplomatic status because the Ambassador expressly confirms that Mr. Beblawi is

"a diplomat of the Arab Republic of Egypt" and that he holds "immunity from suit, not only by

virtue of his current diplomatic status, but also personal immunity due to his official position of

Prime Minister of Egypt at the time of the events cited." Dkt 19-1, Ex. B.

13.     Diplomatic Note 0077-2020, issued June 23, 2020, by the Egyptian Embassy to

the United States State Department likewise reflects Mr. Beblawi's status as a diplomatic agent

as it advises that, "A detailed diplomatic note will soon be dispatched to the State Department

respectfully requesting the United States of America to recognize the immunities from suit in

respect to Mr El Beblawi." Dkt. 22-1, Ex. A. The Egyptian Embassy then issued Diplomatic

Note 0078-2020 on June 24, 2020, wherein the Egyptian government officially requested a

suggestion of immunity from the United States be issued to this Court. Dkt 22-1, Ex. B.

*14.*     By virtue of his diplomatic status as established by all evidence before this Court,

Mr. Beblawi is immune from the civil and administrative jurisdiction of the United States—

including service of process—under the DRA and VDCR. *See* VCDR art. 31(1), Dec. 13, 1972,

---

[5]     Plaintiff will likely cite to the inapposite cases of *U.S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425 (S.D.N.Y. 1963) and *Diallo v. Strauss-Kahn*, No. 307065/11, 2012 WL 1533179 (N.Y. Sup. Ct. May 01, 2012) he previously relied on to argue that a G-1 visa does not confer diplomatic immunity. The Court need not labor long such cases. In *Fitzpatrick*, the United States government actively *opposed* the diplomatic immunity claim, which was premised on Section 15(2) of the Headquarters Agreement. 214 F. Supp. at 432. Here, the United States government has not disputed Mr. Beblawi's claim of immunity; it has not even had the chance to weigh in. And Section 15(2) of the Headquarters Agreement is not presently at issue. Similarly in *Diallo*, IMF Managing Director Dominic Strauss-Kahn, asserted immunity under the Convention on the Privileges and Immunities of the Specialized Agencies, to which the United States is not a signatory. No. 307065/11, 2012 WL 1533179 at *3 (N.Y. Sup. Ct. May 01, 2012). Mr. Beblawi is not asserting immunity under that framework.

23 U.S.T. 3227; 22 U.S.C. § 254d; *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949) (affirming dismissal and holding that joining a diplomatic agent as a defendant would violate diplomatic immunity); *Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980–81 (D.C. Cir. 1965) (affirming dismissal and "conclude[ing] that the purposes of diplomatic immunity forbid service" on a foreign diplomat); *Aidi v. Yaron*, 672 F. Supp. 516, 518 (D.D.C. 1987) ("This case merely declares the rather obvious point that if a diplomat is immune from suit he or she is equally immune from service of process").

15.    As Mr. Beblawi is immune from service, the Court should grant this motion to quash, along with the concurrently-filed motion to dismiss under Federal Rule of Civil Procedure 12(b), and dismiss Plaintiff's lawsuit with prejudice. *Aidi*,  672 F. Supp. at 518 (D.D.C. 1987) (granting motion to quash service of process on a diplomatic agent);  *Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187, 195 (D.D.C. 2007) (granting motions to quash service and dismiss action against defendants entitled to diplomatic immunity under the Vienna Convention on Diplomatic Relations).

Based on the foregoing, Mr. Beblawi respectfully requests through the undersigned counsel that the Court quash the service of process in this action and dismiss Plaintiff's Complaint with prejudice on the grounds that Mr. Beblawi is entitled to diplomatic immunity.

Respectfully submitted,

Dated:  June 24, 2020

/s/ Timothy M. Broas

TIMOTHY M. BROAS (D.C. Bar #391145)
RACHEL A. BECK (D.C. Bar #1029929)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW Suite 700
Washington, DC  20004
Tel.: (202) 508-6000
Email: timothy.broas@bclplaw.com
          rachel.beck@bclplaw.com

/s/ Robert H. Bunzel

ROBERT H. BUNZEL (*pro hac vice*)
LOUISE ANN FERNANDEZ (*pro hac vice*)
JOHN J. BARTKO (*pro hac vice*)
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center Suite 800
San Francisco, CA 94111
Tel: (415) 956-1900
Email: rbunzel@bzbm.com
          lfernandez@bzbm.com
          jbartko@bzbm.com

*Attorneys for Hazem Abdel Azis El Beblawi*

## CERTIFICATE OF SERVICE

It is hereby certified that on June 24, 2020, I caused the foregoing to be served upon all counsel of record by electronic delivery through the Court's ECF program.

_/s/ Timothy M. Broas_
TIMOTHY M. BROAS