IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMED SOLTAN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 20-cv-1437 (CKK) |
| | ) |
| v. | ) |
| | ) |
| HAZEM ABDEL AZIZ EL BEBLAWI, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
ADMINISTRATIVE STAY OF PROCEEDINGS FOR THE COURT TO ASSESS
THE STATUS OF DEFENDANT BEBLAWI'S CLAIM OF DIPLOMATIC IMMUNITY**

Eric L. Lewis (D.C. Bar #394643)
Waleed Nassar (D.C. Bar #992659)
Jeffrey D. Robinson (D.C. Bar #376037)
Aisha E. Bembry (D.C. Bar #4889500)
LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC
1101 New York Ave., N.W, Suite 1000
Washington, D.C. 20005
(202) 833- 8900 (voice)
(202) 466-5738 (facsimile)

Counsel for Plaintiff Mohamed Soltan

## TABLE OF AUTHORIES

*Agreement between the United States of America and the United Nations regarding the Headquarters of the United Nations*, Art. V, Section 15, November 21, 1947, 61 Stat. 3416 https://treaties.un.org/doc/Publication/UNTS/Volume%2011/volume-11-I-147-English.pdf. ..................................................................................................................................7

*Articles of Agreement of the International Monetary Fund*, Art. IX, Section. 8, July 22, 1944, 60 Stat. 1401, https://www.imf.org/external/pubs/ft/aa/index.htm ..........................1

IMF Executive Directors and Voting Power, https://www.imf.org/external/np/sec/memdir/eds.aspx .................................................................8

IMF Members' Quotas and Voting Power, and IMF Board of Governors. https://www.imf.org/external/np/sec/memdir/members.aspx ........................................................8

IMF Organization Chart, https://www.imf.org/external/np/obp/orgcht.htm ..................................8

Office of Foreign Missions, U.S. Dept. of State, *Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities* (2019), https://www.state.gov/wp-content/uploads/2019/09/19-04499-DipConImm_v2_web.pdf ........................................................9

U.S. State Department, Diplomatic List, https://www.state.gov/resources-for-foreign-embassies/diplomatic-list/ ..............................................................................................................8, 9

Visa Information for Temporary Visitors, http://www.apsanlaw.com/law-18.Temporary-Immigration-Visas.html. ...........................................................................................................8

In his attempt to avoid answering the claims against him for his brutal treatment of plaintiff Soltan, defendant Beblawi has filed five substantive pleadings raising every imaginable basis for immunity – most of them baseless on their face. But he never claimed the basis for immunity that he now tries to back-door in the form of his filing on Friday afternoon, July 17, 2020, attaching what purports to be a July 7 letter from the State Department asserting a new – or newly revealed – basis for immunity. The letter states that Beblawi assumed "his duties as the Principal Resident Representative of the Arab Republic of Egypt to the International Monetary Fund, effective November 2, 2014, and that he continues to serve in such capacity" pursuant to certain provisions of the UN Headquarters Agreement. Dkt. 32-1 at 3. Not only has Beblawi never pursued this new basis for immunity in his numerous submissions on the issue – including in his pending motion to dismiss – he previously specifically disavowed such a basis.[1] Neither the letter nor Beblawi's filing provides any official public document that records that status.

The UN Headquarters Agreement, moreover, requires a tripartite agreement for any designation of a Principal Resident Representative at a UN sub-agency, an agreement among the sub-agency (here, the IMF), the country where the agency is located (the United States), and the country that seeks to accredit a Principal Resident Representative (Egypt). There is no assertion, much less evidence, in Beblawi's recent filing that the IMF has agreed to Beblawi's designation. Furthermore, the IMF Articles of Agreement is silent as to Principal Resident Representatives and only designates the limited type of immunity – Official Acts Immunity – for all senior IMF officials. *See Articles of Agreement of the International Monetary Fund*, Art. IX, Section. 8, July 22, 1944, 60 Stat. 1401 (*available a*t https://www.imf.org/external/pubs/ft/aa/index.htm).

---

[1] Corrected Memorandum in Support of Defendant's Motion to Dismiss ("MTD"), Dkt. 30-1 at 18, n.50 (stating that "the [UN] Headquarters Agreement is not presently at issue); Reply to Plaintiff's Opposition to Defendant's Motion for Extension of Time, Dkt. 22 at 4, n.3 (same).

In his motion to dismiss, Beblawi announced that he is seeking agreement from the State Department to file a "Suggestion of Immunity" on his behalf with the Court.[2] While it is clear that the July 7 letter is not the Suggestion of Immunity that Beblawi has been seeking, it is unclear precisely what Beblawi intends to argue is the force and effect of this unusual new document. In these circumstances, if he intends to rely on it, Beblawi should be compelled to explain the provenance of this document and to submit proper briefing detailing the legal arguments he now advances in reliance on it.

The reasons for this motion should be clear. First, defendant offers no explanation as to why he did not make this specific diplomatic immunity claim from the outset but instead spent multiple pages of his motion to dismiss (and previous filings regarding his request for an extension and his opposition to a status conference) arguing other bases for his status. Defendant also does not bother to explain why ten days passed from its date and his filing it with the Court. Neither defendant nor the State Department explain whether the letter's ambiguous description of his status as "effective November 2, 2014" means it was conferred on defendant on that date or was only conferred recently. Neither clarify whether this newly announced status is meant to be retroactive from and after that 2014 date and, if retroactive, by what legal authority. If it was only recently conferred, neither Beblawi nor the State Department offers any explanation as to why it was conferred. Finally, neither Beblawi nor the State Department letter point to any official document that records this status.

In short, defendant's filing raises many more question than it answers. This Court, and plaintiff, are entitled to those answers and to know precisely what Beblawi's arguments are with regards to this new filing so that plaintiff knows what arguments to respond to. As it stands, the

---

[2] MTD at 13–14 (detailing defendant's intention to obtain a Suggestion of Immunity).

briefing record is devoid of what in particular Beblawi is claiming and the specific law to support his position.

Later this evening, defendant intends on filing his consolidated opposition to the pending motions to dismiss and to quash filed by Beblawi. For the reasons outlined herein, plaintiff hereby moves the Court for an Order to be entered subsequent to the filing of plaintiff's opposition: (i) imposing an administrative stay of this case pending answers by defendant to the questions surrounding this highly questionable document; (ii) requiring defendant to submit any diplomatic immunity arguments he wishes to raise based on the document; (iii) affording plaintiff an opportunity to investigate the document's provenance, timing, import, and jurisprudential effect; and (iv) allowing plaintiff to submit any arguments in opposition to defendant's newly-minted diplomatic immunity claims.

**Beblawi's Myriad Immunity Arguments to Date**

From the outset of his appearance in this matter, Beblawi has raised a bevy of immunity arguments at each and every possible occasion. Yet, *never* did he argue that he was a Principal Resident Representative, the basis that he apparently now seeks to claim.

In Beblawi's first substantive filing in this case – his request for an extension of time – he noted generically that he intended to assert "both official and diplomatic immunities in challenging jurisdiction." *See* Dkt. 13 at 3. In support, he recited his (mistaken) belief that his G-1 Visa conferred immunity upon him, but he made no mention that he is a Principal Resident Representative, as he now apparently claims.

Second, in his opposition to plaintiff's motion for an emergency status conference, he claimed an assortment of bases for immunity, both diplomatic and official acts, again arguing that the "primary source" of his immunity is reflected in his G-1 Visa and not in his position with the IMF, as is now apparently claimed. Dkt. 19 at 2, n. 4. In that opposition, Beblawi described

3

himself as "an Egyptian citizen and international public servant who currently serves as an Executive Director of the International Monetary Fund ('IMF')." *Id.* at p. 1. Again, he made no mention whatsoever of being a Principal Resident Representative. And as plaintiff's motion for a status hearing regarding the arrest of his cousins pointed out, the International Organizations Immunities Act, pertaining to the IMF, only provides immunity for actions taken within the scope of official IMF duties. Dkt. 20 at 6 (citing 22 USC §288d(b)).

In his third opportunity to surface his new-found basis for immunity – in his opposition to defendant's motion for an extension of time (Dkt. 22) – Beblawi devoted several pages of argument to his then-asserted grounds for immunity but not one word that he is a "Principal Resident Representative" and entitled to immunity on that ground. Beblawi again argued immunity defenses in his motion to quash service (Dkt. 24), and then again, now for a fifth time, in his motion to dismiss (Dkt. 25), essentially rehashing the arguments he previously asserted.

In sum, Beblawi had five bites at this apple over a period of six weeks. There has been multiple adversarial briefing on diplomatic immunity and, until Friday afternoon, not a word about him being a Principal Resident Representative but, indeed, the converse: an explicit disclaimer of an intent to rely on the UN Headquarters Agreement and an undertaking to obtain a Suggestion of Immunity to be filed in this case. At present, that is the record on diplomatic immunity. Those arguments are the only operative bases asserted by Beblawi for diplomatic immunity currently before the Court, none of which include his status as a "Principal Resident Representative."[3] Since

---

[3] Since defendant's latest maneuver on diplomatic immunity will require an entirely different argument on this issue than the one that plaintiff anticipated and has been diligently briefing for more than three weeks, plaintiff's opposition brief on the pending motion to dismiss will delete the discussion of this issue. So the Court is fully informed as to plaintiff's position on the diplomatic immunity argument that defendant's motion to dismiss actually addressed, plaintiff attaches the draft section (Attachment A) he had anticipated including in his opposition.

it is unclear whether Beblawi intends to pursue those earlier, repeated arguments, however, or hopes instead to be able to pin his diplomatic immunity argument solely on the late-arrived July 7 State Department letter, plaintiff proposes to delete the current diplomatic immunity section from his draft opposition to the motion to dismiss until such time as defendant makes clear what his immunity argument will be.  If the Court grants the instant motion to stay, plaintiff will separately address whatever new submission defendant may make on this issue.  So the Court is fully informed as to plaintiff's position on the diplomatic immunity argument that defendant's motion to dismiss actually addressed, however, plaintiff attaches the draft section (Attachment A) he had anticipated including in his opposition, alongside the opposition to Beblawi's separate official acts immunity claims that are unaffected by this recent filing.

**Questions Raised by Beblawi's Recent Filing**

Based on his recent filing of the State Department's July 7 letter, Beblawi now apparently seeks to change the diplomatic immunity landscape.  He has not filed the letter, however, in support of any affirmative motion or even as a proffered addition to or replacement of his pending motion to dismiss on diplomatic immunity grounds.  The letter is not in the usual form of a Suggestion of Immunity filed directly with the Court by the State Department that he told the Court he was in the process of attempting to obtain.  It is instead a letter from the Deputy Director of the Office of Foreign Missions that states:

> The official records of the Department of State, Office of Foreign Missions, indicate that Mr. Hazem Abdelaziz Mohamed El Beblawi, born October 17, 1936, is notified to the Department as assuming his duties as the Principal Resident Representative of the Arab Republic of Egypt to the International Monetary Fund, effective November 2, 2014, and that he continues to serve in such capacity.

Dkt. 32-1 at 3.

Something is wrong here. Beblawi would have the Court believe that when he drafted his motion to dismiss, he did not know that he was the Principal Resident Representative for Egypt, even though the Deputy Director's letter says he has held that status "effective" for the past six years. The Egyptian embassy sent two Diplomatic Notes to the State Department urging a Suggestion of Immunity, without any reference to the fact that reportedly Beblawi was already one of the few with Principal Resident Representative status.

Were Beblawi and his embassy trying to keep it a secret from plaintiff or the Court? Or did something else happen here? Did the Department of State and the Foreign Ministry of Egypt decide that this was a low-visibility way to try to get the TVPA case against Beblawi dismissed? The letter does not say that he has been Principal Resident Representative "since" November 2, 2014, but that it was "*effective*" November 2, 2014. Have the "official records of the State Department" so identified Beblawi since 2014, or does the letter's language that the *Department* "is notified" of his PRR status mean that earlier the Department did not know that he enjoyed this status? Or was this a way to assign this status on a retroactive basis while being less than candid with the Court? Why are no "official records" attached to the letter?

Plaintiff submits that in these circumstances the Court should stay consideration of the motion to dismiss until defendant provides the Court with a full and candid explanation of how and why this has occurred and what are the precise legal arguments on diplomatic immunity that defendant now makes in relation to this letter. Plaintiff's opposition to the pending motion to dismiss has been prepared based upon the factual assertions and legal arguments Beblawi made at the time of his filing, when, if he had long been a Principal Resident Representative and entitled to diplomatic immunity, he surely would have known it and so argued to the Court. If, as seems a fair inference, he was not previously a Principal Resident Representative and his status was

6

changed for purposes of this case, plaintiff is entitled to know the circumstances so he can make an informed and comprehensive response on the issue of diplomatic immunity to the Court.

If this status is newly-minted and intended by State to be retroactive, plaintiff is further entitled also to brief the Court as to the legal validity of the wholly distinct issue of retroactive attempts to confer diplomatic immunity after civil suit is filed and as to the discretion accorded the Court if immunity has been reverse-engineered, as may well be the case. The Court should also consider, based on a full record, whether defendant's motion to dismiss was filed in bad faith and without proper disclosure, why this letter sat for ten days between its issuance and filing with the Court, and whether sanctions should be awarded.

Moreover, if Beblawi intends to pursue his claim for diplomatic immunity based on the State Department's letter, he should also be ordered to submit any materials from the IMF showing its agreement to his status as a Principal Resident Representative. Under the UN Headquarters Agreement, diplomatic immunity may be accorded to "principal resident representatives of members of a specialized agency and such resident members of the staffs of representatives of a specialized agency **as may be agreed upon between the principal executive officer of the specialized agency, the Government of the United States and the Government of the Member concerned.**"[4] *Agreement between the United States of America and the United Nations regarding the Headquarters of the United Nations*, Art. V, Section 15, November 21, 1947, 61 Stat. 3416 (emphasis added). If the IMF has agreed that Beblawi is its Principal Resident Representative for Egypt, and not simply an Executive Director representing multiple Middle Eastern countries as previously represented, such an agreement should be furnished to the Court. If there has been no

---

[4] *Available at* https://treaties.un.org/doc/Publication/UNTS/Volume%2011/volume-11-I-147-English.pdf.

such agreement by the IMF, Beblawi owes an obligation to disclose that to the Court so its impact can be addressed.

In addition, "Principal Resident Representative" is one of the categories given a G-1 Visa,[5] which is the visa Beblawi has cited in each of his filings. While Beblawi has filed a copy of his visa (Dkt. 19_1 at 4), it bears no reference to his being a "Principal Resident Representative." Also, why would Beblawi, who is not even Egypt's appointee to the IMF,[6] but, rather, a representative of a regional bloc of 11 countries,[7] be designated as Egypt's "Principal Resident Representative" at that organization? There are two Governors actually appointed by Egypt to the IMF and who sit higher than Executive Directors like Beblawi on the organizational chart.[8]

The State Department also issues persons granted diplomatic immunity a color-coded card stating the explicit extent of their immunity, yet Beblawi has furnished the Court with no copy of such a card.[9] Explanation should be given to why Beblawi's G-1 Visa does not have this listed on

---

[5] *See* http://www.apsanlaw.com/law-18.Temporary-Immigration-Visas.html.

[6] Each member country, Egypt included, appoints a Governor and an Assistant Governor to the IMF to represent that country's interests. *See* https://www.imf.org/external/np/sec/memdir/members.aspx. The current Governor for Egypt is Tarek Amer; the Alternate Governor is Mohamed Maait. Yet even these appointees are not included on the State Department's list of accredited diplomats nor considered by the IMF as accredited. *Compare id*. *with* https://www.state.gov/resources-for-foreign-embassies/diplomatic-list/ at 39–41 (not including Egypt's Governor or Assistant Governor to the IMF).

[7] At the IMF, Beblawi represents Bahrain, Egypt, Iraq, Jordan, Kuwait, Lebanon, Maldives, Oman, Qatar, United Arab Emirates, and the Republic of Yemen. *See* https://www.imf.org/external/np/sec/memdir/eds.aspx.

[8] The IMF's organization chart (https://www.imf.org/external/np/obp/orgcht.htm) shows "Governors" above "Executive Directors."

[9] Office of Foreign Missions, U.S. Dept. of State, *Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities* at 17 (2019)*, available at* https://www.state.gov/wp-content/uploads/2019/09/19-04499-DipConImm_v2_web.pdf (noting that "the only authoritative identity document is the identity card" and describing the color-coded scheme for identification cards, including "blue border for diplomats.").

the face of his document and whether this was the basis on which it was granted. And finally, why, if Beblawi is indeed Egypt's Principal Resident Representative, was he not listed on the April 22, 2020 Spring State Department "diplomatic list" that "contains the names of the members of the diplomatic staffs of all missions…who have diplomatic rank," a list that runs 50 names long for Egypt but still does not include Beblawi? *See* https://www.state.gov/resources-for-foreign-embassies/diplomatic-list/.

These and other vital questions concerning Beblawi's diplomatic immunity claim require answers from defendant before plaintiff can respond to this latest maneuver and the Court can rule on its effect.

## Conclusion

Mr. Soltan, a torture victim, has been put through more than enough by Egypt's former Prime Minister Beblawi and the government that he led. He deserves to have answers to the questions raised above. He deserves to know what precise basis for diplomatic immunity that his torturer is now claiming insulates him from liability for his conduct, and he deserves an opportunity to respond to those diplomatic immunity claims. He should not be forced to feel his way in the dark on a matter that Beblawi claims divests the Court of authority to hear a statutory claim that was enacted into the federal code precisely to prevent torturers from walking the streets of the United States with impunity. Without the relief requested in this motion to stay, plaintiff will be denied that rightful opportunity.

DATED: July 20, 2020					Respectfully submitted,

/s/ Eric L. Lewis
Eric L. Lewis (D.C. Bar #394643)
Waleed Nassar (D.C. Bar #992659)
Jeffrey D. Robinson (D.C. Bar #376037)
Aisha E. Bembry (D.C. Bar #4889500)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1101 New York Ave., N.W, Suite 1000
Washington, D.C. 20005
(202) 833- 8900 (voice)
(202) 466-5738 (facsimile)

Counsel for Plaintiff Mohamed Soltan

# ATTACHMENT A

**Defendant Beblawi Is Not Entitled to Diplomatic Status Immunity**

Defendant attempts to avoid adjudication of his culpability on the merits by trying to invoke diplomatic immunity to insulate himself for his role in inflicting torture and attempting extra-judicial assassination of plaintiff.  Yet far from proffering the needed facts to satisfy his burden, *see Lewis v. Mutond,* 918 F.3d 142, 145 (D.C. Cir. 2019*), cert. denied,* No. 19-185, ---S.Ct. ----, 2020 WL 3492651 (June 29, 2020); *cf. Phoenix Consulting Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000), Beblawi instead invites the Court to ignore both the plain record before the Court and the governing case law that militate against a finding of diplomatic status immunity.  This invitation should be declined.

Beblawi is not entitled to "diplomatic status immunity."  That status is reserved to persons who are actual accredited diplomats representing their home countries, or it requires the State Department to provide the Court with an official "Suggestion of Immunity" for this status to be recognized.  *Mutond*, 918 F.3d at 146-47.  Beblawi is in the United States not as an accredited diplomat representing Egypt but as an international civil servant working at the IMF as one of that organization's Executive Directors, in this case representing the interests of eleven different countries in the Middle East region.  While he holds a G-1 "diplomatic" visa, it does not itself confer upon him diplomatic immunity, and no treaty provides such immunity given his function.  Moreover, under governing law, the Government of Egypt's own apparent position that Beblawi should have diplomatic immunity is irrelevant.

Recognizing that he has no legitimate argument for immunity unless he obtains this Suggestion of Immunity, Beblawi is pulling out all the stops to persuade State to issue a Suggestion of Immunity on his behalf.  No Suggestion has been filed.  And even in the unlikely event that the State Department were to decide to provide a free pass from accountability from torture and issue

a Suggestion, it would not necessarily defeat jurisdiction, but may be simply entitled to "substantial weight" by the court.  *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012).[1]

Beblawi is not accredited by the U.S. Government as a diplomatic agent serving the sovereign interests of Egypt.  He is instead an international civil servant who has chosen to reside in the United States and work at the International Monetary Fund as one of its Executive Directors.  He does not just represent Egyptian interests before that body; he was appointed to his position by eleven separate countries.  He is both protected and bound by the laws of the United States other than with respect to his official acts at the IMF on behalf of those eleven countries.  If he wrongly approves a loan, he is immune; if he assaults a neighbor at the Watergate, he is not.

Each year, the State Department publishes its "Diplomatic List" that "contains the names of the members of the diplomatic staffs of all missions…who have diplomatic rank.  These persons…enjoy full immunity under the provisions of the Vienna Convention on Diplomatic Relations."[2]  Appearance on this list specifies whether a person enjoys status immunity as a diplomat.  *See United States v. Kostadinov*, 734 F.2d 905, 912 (2d Cir. 1984).  The Spring 2020 list, compiled on April 22, 2020, a few weeks before this action was filed, contains over 50 names of accredited diplomats from Egypt; Beblawi is not among them.  *See* https://www.state.gov/resources-for-foreign-embassies/diplomatic-list at 39–41.

Beblawi's position at the IMF is fundamentally distinct from the accredited ambassadors, ministers, and other senior diplomats working on a foreign country's behalf.  As the IMF website makes clear, Beblawi is elected by and represents the macroeconomic interests of a regional bloc

---

[1] Beblawi ignores the subsequent Fourth Circuit decision in *Samantar* in favor of the absolute deference that he suggests. While the D.C. Circuit has not explicitly accepted nor rejected the "substantial weight" standard of the Fourth Circuit for conduct immunity, it remains an open question whether it would do so if confronted with the issue.

[2] *See* https://www.state.gov/resources-for-foreign-embassies/diplomatic-list/ at 1–2.

2

of Middle Eastern countries including Bahrain, Egypt, Iraq, Jordan, Kuwait, Lebanon, Maldives, Oman, Qatar, United Arab Emirates, and the Republic of Yemen.[3] Egypt did not appoint him, and he does not serve the exclusive interests of Egypt.[4] Moreover, even if he were deemed to be an accredited diplomat to the IMF, this status would not immunize him here. The IMF takes the position that its employees who are accredited as diplomats are only entitled to a limited purpose immunity "with respect to acts performed by them in their official capacity."[5] There is obviously no dispute that his conduct at issue in this case had anything to do with the IMF.

Not surprisingly, Beblawi's case support for his immunity contention is non-existent. In the bevy of inapposite cases he cites – none involving IMF employees – had the State Department either (1) entered a formal Suggestion of Immunity – *see Tachiona v. United States*, 386 F.3d 205, 209 (2d Cir. 2004); *Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980-981 (D.C. Cir. 1965); *Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187, 192 (D.D.C. 2007)), or (2) listed the defendant on its registered list of diplomats entitled to immunity. *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019); *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949); *Aidi v. Yaron*, 672 F. Supp. 516, 516 (D.D.C. 1987). These cases provide Beblawi with zero support. He is not an accredited diplomat.

---

[3] *See* https://www.imf.org/external/np/sec/memdir/eds.aspx.

[4] Each country, Egypt included, appoints a Governor and an Assistant Governor to the IMF to represent that country's interests. https://www.imf.org/external/np/sec/memdir/members.aspx. The current Governor for Egypt is Tarek Amer; the Alternate Governor is Mohamed Maait. Notably, even these actual Egypt appointees are not included on the State Department's list of accredited diplomats nor considered by the IMF as accredited. *Compare id. with* https://www.state.gov/resources-for-foreign-embassies/diplomatic-list/ at 39–41 (not including Egypt's Governor or Assistant Governor to the IMF); *see also* https://www.imf.org/external/SelectedDecisions/Description.aspx?decision=A-11780.

[5] *See* https://www.imf.org/external/SelectedDecisions/Description.aspx?decision=A-11780#:~:text=Article%20IX%2C%20Section%208%20of,from%20legal%20process%20with%20respect.

3

Beblawi also advances the unsupported argument that his mere holding of a G-1 Diplomatic Visa confers upon him diplomatic immunity. But simple possession of a diplomatic visa does not confer diplomatic status immunity upon the holder. *See* Restatement (Third) of Foreign Relations Law § 464 (1987) ("Generally, a sending state issues a diplomatic passport to its diplomatic agent and the receiving state gives him a diplomatic visa, but such passports and visas are sometimes issued as a courtesy also to persons other than diplomats, and they do not prove that the holder enjoys diplomatic status or is entitled to diplomatic privileges and immunities in the receiving state.") Diplomatic visas and other administrative diplomatic documents such as passports[6] have little bearing on the diplomatic status immunity inquiry. Indeed, in the sole case addressing the precise G-1 Visa at issue here, the Court rejected diplomatic immunity based on visa status, holding that the administrative grant of the diplomatic visa was "entirely separate" from "the question of the agreement of the United States Government to diplomatic immunity." *U. S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 440 (S.D.N.Y. 1963).[7] Indeed, the courts appear to uniformly reject the notion advanced by Beblawi that a G-1 Visa confers diplomatic immunity. *See United States v. Noriega,* 746 F. Supp. 1506, 1524 (S.D. Fla. 1990), *aff'd*, 117 F.3d

---

[6] Defendant Beblawi notes that before the issuance of this G-1 Visa was conferred, he held a diplomatic passport in Egypt, perhaps to suggest this as another basis for diplomatic immunity. Diplomatic passports have no bearing upon whether or not a holder is later recognized as immune from suit in the United States. *See United States v. Noriega,* 746 F. Supp. 1506, 1524 (S.D. Fla. 1990), *aff'd,* 117 F.3d 1206 (11th Cir. 1997) ("Though diplomatic passports issued by [the sending state] to reflect the esteem which that nation assigned to [d]efendant may have obtained [defendant] certain courtesies in international travel, ***they are without significance in international law and United States law*** and do not, by themselves, entitle [defendant] to any internationally or domestically protected status.") (emphasis added).

[7] Beblawi struggles to distinguish *Casanova* on grounds that there the government opposed immunity but has not weighed in on the issue here. (MTD at 26, n. 49). Yet the *Casanova* court did not base its holding that a G-1 Visa does not automatically confer immunity on the government's position that the defendant did not otherwise qualify for immunity.

1206 (11th Cir. 1997); *United States v. Al-Hamdi*, 356 F.3d 564, 573 (4th Cir. 2004);); *US v. Coplon*, 88 F. Supp. 915, 920 (S.D.N.Y. 1950).

Lastly, Beblawi points to a series of letters written by the Egyptian government requesting that he be granted full diplomatic immunity. Courts routinely disregard such correspondences from foreign states and are not bound by the requests of a foreign state. *See, e.g., United States v. Enger*, 472 F. Supp. 490, 496 (D.N.J. 1978); *United States ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 440 (S.D.N.Y. 1963).

In sum, there is no basis for Beblawi to have diplomatic status immunity given his position in the United States. He is not an accredited diplomat and his visa status is irrelevant.