# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

MOHAMED SOLTAN,

        Plaintiff,

    v.

HAZEM ABDEL AZIZ EL BEBLAWI,

        Defendant.

Case No. 1:20-cv-01437-CKK

**DEFENDANT HAZEM ABDEL AZIZ EL BEBLAWI'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ADMINISTRATIVE STAY OF PROCEEDINGS FOR
THE COURT TO ASSESS THE STATUS OF DEFENDANT BEBLAWI'S
CLAIM OF DIPLOMATIC IMMUNITY**

Robert H. Bunzel
Louise Ann Fernandez
John J. Bartko
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center Suite 800
San Francisco, CA 94111
Tel: (415) 956-1900
rbunzel@bzbm.com
lfernandez@bzbm.com

Timothy Broas
Rachel A. Beck
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW Suite 700
Washington, D.C.  20004
Tel.: (202) 508-6000
timothy.broas@bclplaw.com
rachel.beck@bclplaw.com

*Attorneys for Defendant Hazem Abdel Aziz El Beblawi*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

I.    THE STATE DEPARTMENT CERTIFICATION IS CONSISTENT WITH MR.
      BEBLAWI'S PRIOR ASSERTIONS OF DIPLOMATIC IMMUNITY. ...........................3

II.   THE CERTIFICATION OF IMMUNITY IS CONCLUSIVE EVIDENCE THAT
      MR. BEBLAWI IS IMMUNE FROM SUIT AND ENTITLED TO DISMISSAL. ...........8

      A.    The State Department's Certification of Immunity Is a Conclusive and
            Common Mechanism to Establish Diplomatic Immunity. ......................................9

      B.    In Addition to Being Dispositive, the State Department's Certification of
            Immunity Comports with Applicable Legal Authority...........................................12

      C.    The DRA Mandates Dismissal without Leave to Amend as No Exceptions
            to Art. 31 Immunity Apply and Any Amendment Would Be Futile. ...................16

III.  PLAINTIFF IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY......................17

CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulaziz v. Metro. Dade Cty.*,
   741 F.2d 1328 (11th Cir. 1984) .............................................................................6

*Ahmed v. Hoque*,
   01 CIV. 7224 (DLC), 2002 WL 1964806 (S.D.N.Y. Aug. 23, 2002) ........................... *passim*

*In re Baiz*,
   135 U.S. 403 (1890) .............................................................................................6

*Belhas v. Ya'Alon*,
   466 F. Supp. 2d 127 (D.D.C. 2006), *aff'd*, 515 F.3d 1279 D.C. Cir. 2008) ..........................20

*Belhas v. Ya'alon*,
   515 F.3d 1279 (D.C. Cir. 2008) ..............................................................................19

*Broidy Capital Mgmt. LLC v. Benomar*,
   944 F.3d 436 (2d Cir. 2019) ............................................................................. *passim*

*Butler v. Sukhoi Co.*,
   579 F.3d 1307 (11th Cir. 2009) .............................................................................20

*Carrera v. Carrera*,
   174 F.2d 496 (D.C. Cir. 1949) ........................................................................8, 9, 12

*Crist v. Republic of Turkey*,
   995 F. Supp. 5 (D.D.C. 1998) ...............................................................................19

*Davila v. United States*,
   713 F.3d 248 (5th Cir. 2013) ................................................................................20

*Devi v. Silva*,
   861 F. Supp. 2d 135 (S.D.N.Y. 2012) .................................................................. *passim*

*Doğan v. Barak*,
   932 F.3d 888 (9th Cir. 2019) ............................................................................18, 19

*El-Fadl v. Cent. Bank of Jordan*,
   75 F.3d 668 (D.C. Cir. 1996), *abrogated by Samantar v. Yousuf*, 560 U.S. 305
   (2010) ............................................................................................................19

*Freeman v. United States*,
   556 F.3d 326 (5th Cir. 2009) ................................................................................20

*Gonzalez Pardes v. Vila*,
   479 F. Supp. 2d 187 (D.D.C. 2007) ...................................................................9, 10, 11, 12

*Goodman Holdings v. Rafidain Bank*,
   26 F.3d 1143 (D.C. Cir. 1994) ..............................................................................................19

*Jungquist v. Nahyan*,
   940 F. Supp. 312 (D.D.C. 1996) *rev'd in part on other grounds*, 115 F.3d
   1020 (D.C. Cir. 1997) ...............................................................................................................9

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir.1986).................................................................................................19

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)................................................................................................................18

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
   899 F.3d 1081 (9th Cir. 2018) ..............................................................................................20

*Republic of Mexico v. Hoffmann*,
   324 U.S. 30 (1945)..................................................................................................................18

*Ex parte Republic of Peru*,
   318 U.S. 578 (1943)................................................................................................................18

*Sabbithi v. Al Saleh*,
   605 F. Supp. 2d 122 (D.D.C. 2009) ............................................................................ *passim*

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ...............................................................................................................19

*Shepherd v. Annucci*,
   921 F.3d 89 (2d Cir. 2019).....................................................................................................19

*Spacil v. Crowe*,
   489 F.2d 614 (5th Cir. 1974) .................................................................................................19

*Tachiona v. United States*,
   386 F.3d 205 (2004)................................................................................................................15

*United States v. Enger*,
   472 F. Supp. 490 (D.N.J. 1978) ..............................................................................................6

*Zdravkovich v. Consul Gen. of Yugoslavia*,
   No. 98-7034, 1998 WL 389086 (D.C. Cir. June 23, 1998) ...............................................9, 12

*Zuza v. Office of the High Representative*,
   Case 1:14-cv-01099-RC, 2016 WL 447442 (D.D.C. Feb. 4, 2016), *aff'd*, 857
   F.3d 935 (D.C. Cir. 2017) .......................................................................................................10

**Statutes**

8 U.S.C. § 1101(a) ..................................................................................................4, 5, 6

22 U.S.C. § 254d ...................................................................................................8, 11, 16

22 U.S.C. § 288 ...............................................................................................................7

**Regulations**

22 C.F.R. § 41.12 .......................................................................................................2, 4, 5

**Other Authorities**

*Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.*
    https://thelawdictionary.org/effective-date/ ...............................................................6

## INTRODUCTION

If you are wrong on the law, ignore the courts and litigate in the press.  If that fails, go after the defense lawyers.

That's where we are in this case.  After launching his politically motivated media campaign against the Egyptian government,[1] and filing this lawsuit against the only former Egyptian public official he could find in the United States, plaintiff, before defendant had even appeared, filed a request for an "emergency scheduling conference" to try to put this official under oath. Defendant's just retained counsel promptly asked plaintiff to consent to a reasonable extension of time to respond to the complaint.  Plaintiff refused to consent to any extension of time, and thus defendant was forced to quickly prepare and file his motions to quash service and to dismiss the complaint.  In his motions, *inter alia*, defendant notified the plaintiff and the Court that the Egyptian Embassy had sent diplomatic notes to the U.S. State Department seeking the State Department's intervention to assert the defendant's immunity from suit.  Those notes were attached to defendant's initial filings.  The Court denied plaintiff's request for an emergency scheduling conference and set forth a briefing schedule for the motions, granting plaintiff to July 28 to file his oppositions.

On July 7, the State Department duly responded to the Egyptian Embassy with a further diplomatic note, attaching a certification of Mr. Beblawi's immunity.  On Friday, July 17, defendant's counsel filed the certification of immunity with the Court.

Rather than take the full time allotted to prepare his opposition to the motions to quash and dismiss and therein address the United States' certification by July 28, plaintiff on Monday July 20 instead filed the present motion that seeks to sidestep the Court's Orders and rearrange the docket.  In an apparent attempt to salvage media attention for his lawsuit after receipt of the unremarkable United States' certification of immunity, plaintiff makes this motion for

---

[1]   As this Court noted in a prior Order, "Plaintiff also makes allegations against other prominent Egyptian officials, including President el-Sisi.   Moreover, Plaintiff's lawsuit has received international press attention, and it appears that Plaintiff and his counsel have made public statements about the lawsuit."  Dkt. 26 at 2.

"Administrative Stay" (whatever that is) seeking to delay a decision on the pending motions to quash and dismiss. Despite a previous failure to hail the defendant before the Court, plaintiff continues to seek, despite immunity, the unprecedented step of putting Mr. Beblawi under oath, this time to answer questions regarding the "provenance" of the United States certification.

In a meandering and histrionic motion, plaintiff essentially accuses the defendant and his lawyers, the Egyptian Embassy, the Egyptian Ambassador, and even the U.S. State Department, of fabricating the immunity certification. His motion is littered with unsupported suspicion regarding the genesis and source of the certification, demanding that the Court stay the case and place Mr. Beblawi under oath to feed plaintiff's paranoia that the certification is a forgery. Plaintiff provides no facts to support such assertions. Moreover, he ignores defendant's filed declarations that attached copies of the diplomatic notes from the Egyptian Embassy to the State Department, asserting Mr. Beblawi's immunity and asking the State Department to acknowledge and assert his immunity. Now, faced with the reality of the State Department's firm response officially certifying that immunity, thus threatening his political agenda and media campaign, plaintiff through his counsel cries foul and accuses everyone of conspiring to fabricate the evidence and fact of certified immunity. This borders on Rule 11 violations.

Plaintiff also falsely accuses the defendant of failing, despite 5 attempts ("bites at the apple"), to assert Mr. Beblawi's diplomatic immunity on the basis of his status as a principal resident representative from Egypt to the IMF, and thus "surprising" plaintiff with a certification based on that form of immunity. Once again, plaintiff and his lawyers ignore and distort the record. Defendant has indeed asserted his diplomatic immunity (as well as official immunity) in every pleading he has filed to date, and has specifically asserted that his G-1 Visa designation, by regulation, derives from his principal resident representative status.[2] Plaintiff's assertions to the

---

[2]   *See* July 1, 2020 Corrected Memorandum in Support of Defendant's Motion to Dismiss ("Corrected Memorandum"), Dkt. 30-1, at 17: "Mr. Beblawi's G-1 Diplomatic Visa supports his diplomatic immunity claim because it corroborates his status as a diplomat while within the United States…; *see also* 22 C.F.R. § 41.12 (confirming **'G-1' designation reflects status as 'designated principal resident representative of a foreign government'**)."  (emphasis added).

contrary are wholly without support, and do not provide a basis for granting a stay.

This motion should be treated as what it is: a desperate attempt to delay dismissal of a politically motivated lawsuit against a fully accredited and immune diplomat.  As if the baseless accusations of forgery and misrepresentation of the briefing record were not improper enough, plaintiff continues to use the Court's public docket to publish language that the media may lift and quote.  Despite basing virtually his entire case against the defendant on "information and belief," see Dkt. 30-1, pp. 7-9, and supporting his extraordinary motions with only hearsay declarations, plaintiff now complains of  "brutal treatment" by the defendant and goes so far as to call the former prime minister "his torturer."  Mot. at 1 and 9.  This is unalleged and unsupported propaganda.  Plaintiff's hyperbolic characterizations and baseless theory of conspiracy to fabricate official records have no place in the judicial process, and disrespect the rule of law, the defendant, his lawyers, the Egyptian Embassy, the State Department, and the Court. In short, the plaintiff's groundless assertions are a smoke screen to hide a failed case.

Plaintiff's motion should be denied.  First, there is no basis for Mr. Soltan to feign surprise or to argue that Mr. Beblawi has been inconsistent in asserting full diplomatic immunity before this Court.  *See*, Argument, § I.  Second, the U.S. certification of immunity is normative, conclusive and dispositive.  *See*, Argument, § II.  Finally, no discovery or further inquiry is needed since no factual basis for an exception to Mr. Beblawi's confirmed diplomatic immunity is asserted or can exist.  *See*, Argument, § III.  Mr. Beblawi respectfully asks the Court to deny the motion and enter an Order dismissing this lawsuit without leave to amend.

## ARGUMENT

## I.   THE STATE DEPARTMENT CERTIFICATION IS CONSISTENT WITH MR. BEBLAWI'S PRIOR ASSERTIONS OF DIPLOMATIC IMMUNITY.

Plaintiff's motion asserts that Mr. Beblawi "never claimed the basis for [diplomatic] immunity that he now tries to back-door" with the State Department's certification, and "never pursued this new basis for immunity in numerous submissions on this issue." Mot. at 1.  Plaintiff thus posits a false construct that defendant "seeks to change the diplomatic immunity landscape."

Mot. at 5.  This is all patently untrue.  Mr. Beblawi has consistently asserted full diplomatic immunity from suit and service.  Indeed, Mr. Beblawi's pleadings on the subject of diplomatic immunity—prior to the United States' July 7, 2020 certification at Dkt. 32-1—were filed early because Mr. Soltan refused a reasonable extension so the United States' position could be first obtained.  Dkt. 13.  Plaintiff's registration of surprise or indignation is improper.[3]

The core argument advanced by plaintiff on this motion is that diplomatic immunity based on Mr. Beblawi's status as a principal resident representative of Egypt to the IMF was not earlier forecast, and that Mr. Beblawi's repeated reference to the significance of his "G-1 Visa" does not support such status.  Mot. at 3, 6. This is wrong both factually and legally.  Mr. Beblawi in prior filings raised his principal resident representative status.  Defendant's June 24, 2020 motion to quash, Dkt. 24, at 4, states:

> 11. Mr. Beblawi's G-1 Diplomatic Visa supports his diplomatic immunity claim because it corroborates his status as a diplomat while within the United States. *See* 8 U.S.C.A. § 1101(a)(11) (West 2014) (defining "diplomatic visa" to mean a "nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe"); 22 C.F.R. § 41.12 (confirming **"G-1" designation reflects status as "designated principal resident representative of a foreign government"**).

Emphasis added.

In Mr. Beblawi's July 1, 2020 Corrected Memorandum in support of his motion to dismiss, he also asserted that the "G-1 Visa" designation means, by regulation, that he is a "designated principal resident representative of a foreign government."  Dkt. 30-1 at 17.  Mr. Beblawi's citation to 22 C.F.R. § 41.12 in both the motion to quash and the motion to dismiss made the correct point that a G-1 Visa designation is based on being a "principal resident representative."  The statutory authority for federal regulation 22 C.F.R. § 41.12  is 8 U.S.C. § 1101(a), cited at p. 4 of Mr. Beblawi's motion to quash, Dkt. 24, as noted in the indented quote above.  Section 1101(a)(15) of

---

[3]   The suggestions by plaintiff that prior pleadings from the defense on this issue may have been in "bad faith," Mot. at 7, or that the July 17, 2020 filing of the State Department's immunity certification is some form of "maneuver," *id*. at n.3, are unfortunate and excessive advocacy.  Nor is there anything unusual or unexplained in the government's certification.  *See*, § II, *infra*.

the same statute defines "nonimmigrant aliens" to include, among others, the enumerated class to which Mr. Beblawi as a diplomat belongs:

> **(G)(i) a designated principal resident representative of a foreign government recognized de jure by the United State**, which foreign government is a member of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669) [22 U.S.C. 288 et seq.], accredited resident members of the staff of such representatives, and members of his or their immediate family;

Emphasis added.

The regulation at 22 C.F.R. § 41.12 and the plain meaning of 8 U.S.C. § 1101(a)(15)(G)(i) could not be clearer that G-1 status is due to a "principal resident representative" designation. Mr. Beblawi has consistently advanced the significance and primary source for his diplomatic immunity status as "reflected" in or evidenced by his G-1 Visa. Dkt. 13 at 3; Dkt. 19, at 2, n. 4; Dkt. 19-1, p. 4 of 6 [G-1 Visa image]; Dkt. 22 at 4-5; Dkt. 24, ¶ 11 [Mr. Beblawi falls "within an enumerated class eligible for receipt of a diplomatic G-1 visa"]; Dkt. 30-1 at 17-18. The meaning and import of his official visa status was stated by Mr. Beblawi in both of his substantive motions to dismiss and quash. Such status is uncontroversial under statute and regulation. The level of surprise ginned up in plaintiff's current motion is not credible.

The genesis of the State Department's certification of immunity is straightforward. A June 21, 2020 letter to Mr. Bunzel at Dkt. 19-1, p. 6 of 6, advises that "the Government of the Arab Republic of Egypt intends to issue a Diplomatic Note to the State Department of the United States of America." Egypt's ensuing 22 June 2020 diplomatic note 0077-2020, Dkt. 22-1 p. 4 of 6, advises that "[a] detailed diplomatic note will soon be dispatched to the State Department respectfully requesting the United States to recognize the immunities from suit in respect to Mr El Beblawi." And the resulting diplomatic note itself, 00078-2020, dated 24 June 2020, Dkt. 22-1 p. 6 of 6, requests the "United States Government to submit to the court a Suggestion of Immunity" on a "twofold" basis, including because "Mr El Beblawi is inviolable and immune from civil suit on account of his current diplomatic status."

Thereafter, the United States State Department in cover Note 20-959, Dkt. 32-1 p. 2 of 4, acknowledged the diplomatic notes from Egypt "related to the immunity" of Mr. Beblawi as "the Principal Resident Representative of the Arab Republic of Egypt" to the IMF, Dkt. 32-1 p. 2 of 4, and "enclosed" the "certification of Mr. Elbeblawi's immunity." *Id*. The attached certification, Dkt. 32-1 pp. 3 and 4, confirms that the State Department oversees and maintains "the official records of certain diplomatic agents," and that "[t]he official records … indicate" that Mr. Beblawi "is notified" to the Department "effective November 2, 2014"—and continuing—as the "Principal Resident Representative" of Egypt to the IMF.[4] The State Department certification at Dkt. 32-1 p. 3 of 4 cites "Section 15(4)" of the UN Headquarters Agreement—not § 15(2)—and quotes from "Article 31 of the Vienna Convention," which is the same source for full diplomatic immunity that Mr. Beblawi has consistently asserted. Dkt. 19 at 3; Dkt. 22 at 3; Dkt. 24 ¶¶ 7, 14; and Dkt. 30-1 at 18.[5]

Plaintiff's argument that there has been an "explicit disclaimer" by Mr. Beblawi regarding the United Nations Headquarters' Agreement[6] (Mot. at n.1 and p. 4) is disingenuous. Plaintiff at

---

[4] Plaintiffs' prolix speculation in his Motion, Dkt. 33-1 pp. 8-9, that the term "effective" suggests a charade by the United States government is again unfortunate excessive advocacy, and ignores the plain and unremarkable meaning of that term in legal documents, *i.e.* the "[d]ocumented date when something is due, like a report or results, or when something is applicable or in effect, like a law, or a restriction, or a sale price." *Black's Law Dictionary Free Online Legal Dictionary 2nd Ed*. https://thelawdictionary.org/effective-date/. The assertion in the motion at 2 and 7 that Mr. Beblawi's diplomatic immunity has been manufactured to be "retroactive" is unfounded and illogical. Mr. Beblawi has held his position in the United States at the IMF since 2014 and continuing according to the United States, Dkt. 32-1 p. 3 of 4, and diplomatic status-based immunity is based on present—not past—status. *See Abdulaziz v. Metro. Dade Cty.*, 741 F.2d 1328, 1329-30 (11th Cir. 1984) (dismissing action where immunity was conferred during case pendency, finding that "diplomatic immunity flowing from [diplomatic] status serves as a defense to suits already commenced"). Although Mr. Beblawi has been immune from suit since assuming his role as principal resident representative of Egypt to the IMF in 2014, it is worth noting that, as occurred in *Abdulaziz*, even if diplomatic immunity is conferred after a case is filed, such immunity still compels dismissal. *Id*.

[5] Plaintiff's speculation in his motion at 8 as to "why" Mr. Beblawi is designated a principal resident representative is beside the point. That is the business of diplomacy and foreign affairs and left to the Executive Branch. *See United States v. Enger*, 472 F. Supp. 490, 506, n.19 (D.N.J. 1978) ("The courts are bound by a determination of the Department of State that an alien claiming diplomatic status is entitled to that status, since this is construed as a nonreviewable political decision") (citing *In re Baiz*, 135 U.S. 403 (1890)).

[6] United Nations and the United States Regarding the Headquarters of the United Nations

footnote 1 of his motion uses a truncated citation to defendant's July 1, 2020 Corrected Memorandum in support of his motion to dismiss, Dkt. 30-1 p. 18, n.50, which actually states that "Section 15(2) of the Headquarters Agreement is not presently at issue."   Due to plaintiff's unreasonable refusal to extend the time to respond to the complaint, Mr. Beblawi did not have the State Department's July 7, 2020 certification of immunity at the time his motion to dismiss was filed.   That certification invokes "Section 15(4)" of the Headquarters Agreement regarding immunity for principal resident representatives of a UN "specialized agency" such as the IMF— not Section 15(2)—as a basis for Mr. Beblawi's immunity.   Dkt. 32-1, p. 3 of 4.[7]   Mr. Beblawi has relied primarily and consistently on the United States' designation of his full diplomatic status, which the government in the certification explains is pursuant to the UN Headquarters Agreement. There is no inconsistency.[8]

Finally, plaintiff asserts that the State Department's certification of immunity is not the "suggestion of immunity" Mr. Beblawi "announced that he is seeking agreement from the State Department."   Mot. at 2.   Egypt, on behalf of Mr. Beblawi, did indeed request from the United States a suggestion of immunity covering both diplomatic and official foreign acts immunity.   Dkt. 22-1, p. 6 of 6.   Mr. Beblawi in his pleadings also raised the request for a suggestion of immunity, and moreover advised the Court and plaintiff that he was seeking the "immunity position" of the United States, Dkt. 19 at 5, and for the United States to "confirm" his immunity "status."   Dkt. 22 at 4.   Because diplomatic immunity is conclusive and dispositive and has been certified by the

---

("Headquarters Agreement") Nov. 21, 1947, 61 Stat. 3416, TIAS 1676, 11 UNTS 11.

[7]   As Mr. Beblawi explains in the next section, case law under the Headquarters Agreement supports the State Department's position that full diplomatic immunity attaches.

[8]   Plaintiff's angst, evident on the surface of the present motion, underscores disappointment in a legal strategy which assumed, incorrectly, that Mr. Beblawi's diplomatic immunity was only functional and derived from the IMF.   *See*, plaintiff's June 17, 2020 letter, Dkt. 13-1 p. 4 of 5 ("Our understanding is that the immunity arguments are based upon your client's senior position at the International Monetary Fund."); Dkt. 19 at 2, n.4 ("Plaintiff believes Mr. Beblawi will assert only immunity based on Mr. Beblawi's 'senior position at the International Monetary Fund'"); Dkt. 20 at 2 ("the IMF's own foundational documents make clear that an IMF employee, at whatever level, only has immunity for official acts undertaken on behalf of the IMF"); and Mot,, Dkt. 33-1 at 4 (citing to 22 U.S.C. § 288d(b), which "pertaining to the IMF, only provides immunity for actions taken within the scope of official IMF duties.").

United States here, the suggestion of immunity covering foreign official acts is not required to grant Mr. Beblawi's motions to dismiss and/or quash.

## II.   THE CERTIFICATION OF IMMUNITY IS CONCLUSIVE EVIDENCE THAT MR. BEBLAWI IS IMMUNE FROM SUIT AND ENTITLED TO DISMISSAL.

The State Department's formal certification of immunity is conclusive evidence that Mr. Beblawi is entitled to full diplomatic immunity under Art. 31 of the Vienna Convention on Diplomatic Relations ("VCDR") by virtue of his status as a principal resident representative of Egypt to the IMF.  *See* Dkt. 32-1; *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949) ("The courts are disposed to accept as conclusive of the fact of the diplomatic status of an individual claiming an exemption, the views thereon of the political department of their government"); *see also* Headquarters Agreement, Art. V, § 15(4) ("principal resident representatives of members to a specialized agency" are entitled "to the same privileges and immunities … as [the United States] accords to diplomatic envoys"); Agreement Between the United Nations and the IMF ("UN Relationship Agreement") Art. 1, Nov. 15, 1947, 16 UNTS 325 (the IMF is a specialized agency); VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227 (diplomatic envoys "shall also enjoy immunity from [a receiving State's] civil and administrative jurisdiction").

Under the Diplomatic Relations Act of 1978 ("DRA"), the Court must therefore dismiss the Complaint without leave to amend as no exception to Art. 31 immunity applies and no amendment could overcome the jurisdictional bar.  22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity … under the [VCDR]  or under any other laws extending diplomatic privileges and immunities, shall be dismissed"); *see* VCDR art. 31(1), Dec. 13, 1972, 23 U.S.T. 3227 (enumerating three exceptions to diplomatic immunity); *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (affirming dismissal without leave to amend as new allegations cannot overcome immunity and "[a]llowing such a futile amendment would be particularly prejudicial where the defendant is a diplomat who possesses treaty-based immunity from suit").

**A.      The State Department's Certification of Immunity Is a Conclusive and Common Mechanism to Establish Diplomatic Immunity.**

In the D.C. Circuit, "courts are required to accept the State Department's determination that a foreign official possesses diplomatic immunity from suit." *Zdravkovich v. Consul General of Yugoslavia*, No. 98-7034, 1998 WL 389086, *1 (D.C. Cir. June 23, 1998) (per curiam); *see Carrera*, 174 F.2d at 497; *Jungquist v. Nahyan*, 940 F. Supp. 312, 321–22 (D.D.C. 1996) ("[T]he determination of a diplomat's status … is made by the State Department, not the Court."), *rev'd in part on other grounds,* 115 F.3d 1020 (D.C. Cir. 1997)).

There is no rule prescribing a singular mechanism by which a State Department certification must be presented to the Court. Rather, the D.C. Circuit has instructed that "[i]t is enough that [the diplomat] has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court." *Carrera*, 174 F.2d at 497 (affirming dismissal based on diplomatic immunity established by a letter from the Secretary of State's legal counsel certifying diplomatic status).

In practice, courts in this Circuit and others have accepted State Department certifications filed by litigants, foreign embassies, as well as the United States government, and have consistently found such certifications to be conclusive evidence of diplomatic status.  *See, e.g.*, *Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 126 (D.D.C. 2009) (defendant filed a letter from the State Department certifying status as a diplomatic agent at the Embassy of Kuwait to establish immunity); *Gonzalez Pardes v. Vila*, 479 F. Supp. 187, 192 (D.D.C. 2007) (Embassy of Argentina filed letter from State Department certifying defendant's status as a diplomatic agent to establish immunity); *Devi v. Silva*, 861 F. Supp. 2d 135, 140 (S.D.N.Y. 2012) (defendant filed diplomatic note from the United States Mission to the United Nations certifying his status as Deputy Permanent Representative of Sri Lanka to the United Nations to show immunity); *Ahmed v. Hoque*, 01 CIV. 7224 (DLC), 2002 WL 1964806, at *2 (S.D.N.Y. Aug. 23, 2002) (United States government filed the State Department's certification establishing that defendant was the Minister of the Permanent

Mission of the People's Republic of Bangladesh to the United Nations and entitled to immunity).

Here, the Egyptian government requested that the State Department recognize Mr. Beblawi's diplomatic status and corresponding immunity. *See* Dkts. 19-1 and 22-1. The State Department responded via certification of immunity, confirming that Mr. Beblawi is entitled to "the privileges and immunities of diplomatic envoys" provided under Art. 31 of the VCDR by virtue of his status as the principal resident representative of Egypt to the IMF. Dkt. 32-1 at 3. On July 17, 2020, Mr. Beblawi filed the certification of immunity, thereby communicating the State Department's recognition of his diplomatic status to the Court. *Id.* Thus, the record before the Court conclusively shows that Mr. Beblawi is entitled to diplomatic immunity.

In an effort to avoid dismissal and undermine the State Department certification process, plaintiff raises a number of misguided arguments. First, he argues that the certification of immunity is an "unusual new document" and fails to attach any "official records." *See* Mot. at 2, 5-6. Plaintiff is, at best, misinformed. The certification of immunity is itself an official record issued by the Office of Foreign Missions, and it is in the typical format employed by the State Department when certifying an individual's status and the level of diplomatic immunity to which the individual is entitled. Here, the certification of immunity is comparable to those filed in *Sabbithi*, *Gonzalez*, *Devi*, and *Ahmed*. *See* Case 1:06-cv-00089-PLF (D.D.C. 2007) Dkt. 17-1, filed 10/13/06, pp. 1-3 of 48 (9/25/06 State Department certification in *Gonzalez*); Case 1:07-cv-00115-EGS (D.D.C. 2009) Dkt. 16-2, filed  03/30/07, pp. 2-3 (3/15/07 State Department certification in *Sabbithi*);  Case 1:11-cv-06675-JPO (S.D.N.Y. 2012) Dkt. 5, filed  10/25/11, p. 2 of 6 (10/14/11 letter brief quoting United States Mission to the United Nations 10/3/11 certification in *Devi*); *see also Ahmed*, 2002 WL 1964806, at *2 (summarizing the certification).[9]

---

[9]    Although the certification filed in *Devi* was not attached to the letter brief available on ECF, it is quoted in the second page of the letter brief at Dkt. 5 in that case.  The *Ahmed* docket is not currently available as the Federal Records Center and National Archive Records Administration are closed due to Covid-19.  However, like *Devi*, the *Ahmed* opinion summarizes the certification of immunity. *See Ahmed*, 2002 WL 1964806, at *2.  Additional cases where certifications were issued by Mr. Clifton Seagroves, who executed the certification of immunity here at Dkt. 32-1 pp. 2, 4, include *Zuza v. Office of the High Representative*, Case 1:14-cv-01099-RC, 2016 WL 447442, at *4 (D.D.C. Feb. 4, 2016), *aff'd*, 857 F.3d 935 (D.C. Cir. 2017) Dkt. 41-1, filed 11/20/15 p. 1 of 1 (11/20/15 State Department certification); and *United States v. Dan Zhong*, E.D.NY. Case No.

Next, plaintiff argues that the certification of immunity is somehow ineffective because it was not filed alongside a formal suggestion of immunity. Mot. at 2, 5. This argument is unavailing as the DRA does not require any filing by the United States government to establish diplomatic immunity. *See* 22 U.S.C. § 254d ("[I]mmunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure"). Indeed, a district court in the Southern District of New York recently rejected this same argument, reasoning that "there is no rule requiring a filing in the case by the United States Government," and that "where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity." *Devi*, 861 F. Supp. 2d at 140–41.

Recent decisions by district courts in the D.C. Circuit likewise confirm that a filing by the United States is not required. In *Sabbithi*, Judge Sullivan relied entirely on the State Department's certification of immunity (which the defendants filed) to find the defendants immune from suit. *Sabbithi*, 605 F. Supp. 2d at 126 ("In view of the State Department's determination that the defendants are diplomats and its certification that as diplomats they are immune from suit pursuant to the Vienna Convention, the Court concludes that these defendants are entitled to diplomatic immunity"). Judge Sullivan only turned to the State Department's statement of interest when he determined that the "commercial activities" exception to immunity was inapplicable, and that "[i]n the view of the United States, there is no *jus cogens* exception to diplomatic immunity." *Id.* at 127-29. In *Gonzalez*, Judge Friedman likewise cited the State Department certification (which the Embassy of Argentina filed) to find that the defendants were entitled to diplomatic immunity. *Gonzalez*, 479 F. Supp. 2d at 194 ("The Department of State certified the defendants' diplomatic status, and it is not for this Court to revoke or question it"). As in *Sabbithi*, Judge Friedman only analyzed the United States government's statement of interest to find the "commercial activities" exception inapplicable. *Id.* at 193-94.

Here, as in *Devi, Sabbithi*, and *Gonzalez*, the State Department has certified that Mr.

---

1:16-cr-00614-AMD, Dkt. 130-1, p. 1 of 1, filed 07/18/18 (7/17/18 State Department certification).

Beblawi is a diplomatic agent entitled to full immunity accorded by Art. 31 of the VCDR, and this certification has been duly communicated to the Court. *See* Dkt. 32-1. The fact that the United States government has not filed a formal suggestion of immunity does not negate the effect of its certification, and the Court must accept the State Department's certification as conclusive evidence of Mr. Beblawi's diplomatic status. *Carrera*, 174 F.2d at 497; *Zdravkovich*, 1998 WL 389086, at *1; *Sabbithi*, 605 F. Supp. 2d at 126; *Gonzalez*, 479 F. Supp. 2d at 195; *Broidy*, 944 F.3d at 442.

Lastly, plaintiff complains that a "myriad" of immunity arguments have been raised, and that he was forced to draft his opposition based on an incomplete factual record. Mot. at 3-5. Mr. Beblawi agrees that this lawsuit raises a "myriad" of immunity issues, but the fact that plaintiff had to brief all such issues is a product of his own making.[10] Mr. Beblawi repeatedly asserted his status-based immunity and pointed to his G-1 Visa—which issues only to principal resident representatives and their families—as evidence of such status. Plaintiff rejected that evidence, arguing that absent confirmation by the United States government a G-1 Visa does not establish diplomatic status. *See* Dkt. 20 at 5. Now that the State Department has formally certified Mr. Beblawi's status, plaintiff incorrectly argues that "[s]omething is wrong" and demands further investigation into Mr. Beblawi's status.

**B.** **In Addition to Being Dispositive, the State Department's Certification of Immunity Comports with Applicable Legal Authority.**

While the Court must accept the State Department's certification of Mr. Beblawi's status, it is worth noting that the certification is supported by the plain language of the Headquarters Agreement and case law involving similar fact patterns. In affirming that Mr. Beblawi is immune from suit by virtue of his status as the principal resident representative of Egypt to the IMF, the State Department recognized that the IMF is a "specialized agency," that diplomatic envoys

---

[10]    *See*, Argument § I, above. From the outset, Mr. Beblawi repeatedly asserted that he was entitled to diplomatic immunity by virtue of his status as a diplomatic agent, and he requested a modest extension of time to proceed through the appropriate channels to have the United States confirm his status. *See* Dkt. 13, 19, 19-1, 24, 24-1, 30-1. Plaintiff refused to grant *any* extension, necessitating expeditious briefing on an incomplete record, including a motion to dismiss filed in an abundance of caution as, at the time of filing, the Court had not yet ruled on Mr. Beblawi's motion for an extension of time. *See* Dkt. 30-1 at 1 n.1.

accredited to the United States are entitled to VCDR Art. 31 immunity, and that "principal resident representatives of members of a specialized agency are entitled to the same privileges and immunities as are accorded to diplomatic envoys accredited to the United States," pursuant to Section 15(4) of the Headquarters Agreement. Dkt. 32-1.  The certification of immunity tracks the plain language of Section 15, which provides:

> (1) Every person designated by a Member as the principal resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister plenipotentiary,

> (2) such resident members of their staffs as may be agreed upon between the Secretary–General, the Government of the United States and the Government of the Member concerned,

> (3) every person designated by a member of a specialized agency, as defined in Article 57, paragraph 2 of the Charter, as its principal resident representative, with the rank of ambassador or minister plenipotentiary at the headquarters of such agency in the United States, and

> (4) such other ***principal resident representatives of members to a specialized agency*** and such resident members of the staffs of representatives to a specialized agency as may be agreed upon between the principal executive officer of the specialized agency, the Government of the United States and the Government of the Member concerned,

> ***shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities subject to corresponding conditions and obligations, as it accords to diplomatic envoys*** accredited to it.

Headquarters Agreement, § 15, 61 Stat. 3416, TIAS 1676, 11 UNTS 11 (emphasis added).

Not only does the State Department's certification align with the plain language of Section 15, it also comports with case law analyzing the Headquarters Agreement in similar circumstances. *See, e.g.*, *Ahmed*, 2002 WL 1964806, at *2 (dismissing suit as defendants were entitled to diplomatic immunity pursuant to Section 15 by virtue of the husband's status as a Minister of the Permanent Mission of Bangladesh to the United Nations); *Devi*, 861 F. Supp. 2d at 141 (dismissing suit as defendant was entitled to diplomatic immunity pursuant to Section 15 due to his status as

Deputy Permanent Representative of Sri Lanka to the United Nations).

The *Ahmed* opinion is particularly instructive.  In *Ahmed*, the plaintiff accused husband and wife defendants of illegally forcing him to work unreasonable hours for little pay and restricting his travel.  *Ahmed*, 2002 WL 1964806, at *2.  The defendants moved to dismiss for lack of jurisdiction based on diplomatic immunity and submitted a State Department certification confirming that the husband was the Minister of the Permanent Mission of Bangladesh to the United Nations.  *Id.*  The certification also stated:

> [P]ursuant to Article IV, Section 11 of the Convention on Privileges and Immunities of the United Nations (the "General Convention"), 21 U.S.T. 1418, T.I.A.S. 6900, and Article V, Section 15 of the Agreement between the United Nations and the United States Regarding the Headquarters of the United Nations (the "Headquarters Agreement"), 12 Bevans 956, T.I.A.S. 1676, Mr. and Mrs. Hoque are entitled to the same privileges and immunities in the United States as the United States accords to diplomatic envoys who are accredited to it. Such diplomatic immunity is described in the Vienna Convention on Diplomatic Relations (the "Vienna Convention"), 23 U.S.T. 3227, T.I.A.S. 7502, 500 U.N.T.S. 95.

*Id*.

In an effort to avoid dismissal, the plaintiff urged the court to ignore the plain language of Section 15, and to find that defendants held only functional immunity pursuant to either Art. IV, Section 11 of the Headquarters Agreement or the International Organizations Immunities Act ("IOIA").  *Id.*  The court rejected plaintiff's arguments, reasoning that the United States and United Nations had agreed to extend full diplomatic immunity pursuant to Section 15, and that the court must defer to that agreement.  *Id.* at *4.  Surveying the legal landscape, Judge Cotes noted that "courts have consistently held that … individuals enumerated in Section 15 … are entitled to the same level of diplomatic immunity that the United States extends to accredited diplomatic envoys, and are not limited to functional immunity."  *Id.*  To underscore this point, Judge Cotes also confirmed that "no court has held that the individuals described in Section 15 of the Headquarters Agreement enjoy only functional immunity."  *Id*. at *5.

In *Devi*, Judge Oetken likewise dismissed the plaintiff's claims asserting violations of the

Alien Tort Claims Act ("ATCA") and Torture Victims Protection Act ("TVPA") on the grounds that the defendant, a former commander in the Sri Lankan Army, was entitled to diplomatic immunity as the Deputy Permanent Representative to the United Nations.  *Devi*, 861 F. Supp. 2d at 141.  Like the present matter, the State Department certified the defendant's diplomatic status in a diplomatic note, which stated:

> Pursuant to Article IV, Section 11 of the Convention on Privileges and Immunities of the United Nations, 21 UST 1418, TAS 6900, and Article V, Section 15 of the Agreement between the United Nations and the United States of America Regarding the Headquarters of the United Nations, 12 Beavans 956, TAS 1676, Ambassador Lokugan Hewage Shavendra C. Silva is entitled to the same privileges and immunities in the United States as the United States accords to diplomatic envoys who are accredited to it. Such diplomatic immunity is defined by the Vienna Convention on Diplomatic Relations, 23 UST 3227, TIAS 7502, 500 UNTS 95.

Case 1:11-cv-06675-JPO (S.D.N.Y. 2012), Dkt. 5, filed 10/25/11, p. 2 of 6 (10/14/11 letter brief quoting United States Mission to the United Nations 10/3/11 certification).

At the outset, Judge Oetken rejected the plaintiff's argument that the certification warranted no deference absent a concurrently-filed suggestion of immunity, explaining "there is no rule requiring a filing … by the United States Government."  *Devi*, 861 F. Supp. 2d at 140.  Judge Oetken then reasoned that, in addition to the diplomatic note, the Second Circuit's opinion in *Tachiona v. United States*, 386 F.3d 205 (2004) supported dismissal.  *Id*. at 141.  The *Tachiona* court had held that, as a temporary United Nations representative, Zimbabwe President Robert Mugabe was entitled to full diplomatic immunity under the VCDR pursuant to the Convention on Privileges and Immunities.  *Id.* at 218.  In reaching this decision, the Second Circuit recognized that Section 15 immunity would not cover Mugabe as a *temporary* representative to the United Nations because Section 15 confers full diplomatic immunity to *resident* representatives.  *Id*. at 217-18 n.6.  Given the diplomatic note and *Tachiona*, Judge Oetken concluded in *Devi* that the defendant was "presumptively entitled to immunity under the Vienna Convention and to dismissal under the Diplomatic Relations Act."  *Devi*, 861 F. Supp. 2d at 140-43.  Thus, after affirming that there is no *jus cogens* exception to such immunity, Judge Oetken dismissed the case for lack of

jurisdiction. *Id.*

As in *Ahmed* and *Devi*, Mr. Beblawi here has submitted the State Department's certification that he falls within the enumerated class of individuals accorded full diplomatic immunity under Section 15 of the Headquarters Agreement.  Dkt. 32-1.  Such immunity is described in the VCDR and mandates dismissal under the DRA.  *See* Dkt. 32-1; 22 U.S.C. § 254d; *Devi*, 861 F. Supp. 2d at 140; *Ahmed*, 2002 WL 1964806, at *2.

### C. The DRA Mandates Dismissal without Leave to Amend as No Exceptions to Art. 31 Immunity Apply and Any Amendment Would Be Futile.

Once diplomatic immunity under the VCDR is established, the DRA mandates dismissal without leave to amend.  *See* 22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity . . . under the [VCDR] . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed"); *Broidy*, 944 F.3d at 447 (affirming dismissal without leave to amend where new allegations cannot overcome diplomatic immunity as "[a]llowing such a futile amendment would be particularly prejudicial where the defendant is a diplomat who possesses treaty-based immunity from suit"); *Sabbithi*, 605 F. Supp. 2d at 126 (dismissing suit and recognizing that "if the Court concludes that defendants are immune, it must dismiss the action pursuant to 22 U.S.C. § 254d").

As set forth above, Mr. Beblawi's entitlement to immunity under Art. 31 is clearly established, and none of the three exceptions to Art. 31 immunity apply.  Further, although not alleged, it is worth noting that Art. 31 does not include a *jus cogens* exception to diplomatic immunity, and courts have consistently declined to adopt such an exception.

In *Sabbithi*, Judge Sullivan found that no *jus cogens* norm was at issue, but nevertheless quoted the United States position on the issue: "[i]n the view of the United States, there is no *jus cogens* exception to diplomatic immunity" and "there is not evidence that the international community has come to recognize a *jus cogens* exception to diplomatic immunity." *Sabbithi*, 605 F. Supp. 2d at 129.  In *Devi*, the courts similarly declined to recognize a *jus cogens* exception to diplomatic immunity in a case involving alleged torture and wrongful killing in violation of the

ACTA and TVPA. *Devi*, 861 F. Supp. 2d at 140. The *Devi* court reasoned that "[n]o United States court has recognized a *jus cogens* exception to diplomatic immunity," and cited the United States' position set forth in *Sabbithi* to reason that "deviation from the international consensus on the broad scope of diplomatic immunity . . . would create an acute risk of reciprocation by other States, potentially subjecting U.S. diplomats to controversial litigation in foreign jurisdictions." *Id.* at 142 (internal quotations omitted).

Dismissal without leave to amend is appropriate in this case as plaintiff cannot allege new facts to overcome the jurisdictional bar. *See Broidy,* 944 F.3d at 447. As was the case in *Broidy*, allowing futile amendments would further prejudice Mr. Beblawi, who has already been forced to devote considerable time and resources defending plaintiff's repeated demands that this Court exercise jurisdiction it simply does not have.

## III.   PLAINTIFF IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY.

In his motion, plaintiff seeks to have Mr. Beblawi "compelled to explain the provenance" of the State Department's certification of immunity. Mot. at 2.[11] Plaintiff further demands that Mr. Beblawi "be ordered to submit any materials from the IMF" supporting the basis for his immunity as a principal resident representative. *Id*. at 7. Plaintiff postulates that there are "vital questions" concerning diplomatic immunity that "require answers," including why Mr. Beblawi has not produced a "color coded" identification card, and why his name is not on an alleged State Department "diplomatic list." *Id*. at 8-9.[12]

---

[11]   Plaintiff's motion at 2 also seeks production of "any official document" that records Mr Beblawi's immune status. This misses the fact that the certification at Dkt. 32-1 *is* an official record that certifies immunity, as established above.

[12]   Attached to the accompanying declaration of Robert H. Bunzel is a copy of Mr. Beblawi's United States Department of State Diplomatic Identification Card. While the State Department's certification is conclusive, Mr. Beblawi's identification card reflects both his status as the principal resident representative of Egypt as well as the blue border that plaintiff concedes constitutes an "authoritative identity document" for diplomats. Mot. at 8 n.9. As to the "diplomatic list," plaintiff's inferences lack merit as this list clearly reflects members of missions (e.g., embassies and interests sections) to the United States, not diplomats accredited to the United Nations and its specialized agencies. Officially, Mr. Beblawi has been clearly listed by the IMF. *See*, *e.g.*, listing previously cited by the defendant, Dkt. 19, n.3, and ignored by plaintiff. https://www.imf.org/external/np/sec/memdir/eds.aspx.

In an effort to end run the State Department, plaintiff also contends that the IMF must weigh in on Mr. Beblawi's status. Mot. at 6. Plaintiff cites no case law to support this proposition, likely because there is none. To the contrary, in both *Devi* and *Ahmed* the courts accepted the State Department's certification of diplomatic status pursuant to the Headquarters Agreement and did not require evidence of any additional agreement with the United Nations. *See Devi*, 861 F. Supp. 2d at 140; *Ahmed*, 2002 WL 1964806, at *2.

Plaintiff is not entitled to jurisdictional discovery given the conclusive evidence before the Court on diplomatic immunity. As this Court noted in its June 25, 2020 Order at 1, addressing an earlier motion to compel information from Mr. Beblawi: "Before the Court issues any Orders pertaining to the Defendant Beblawi's conduct, the Court must ascertain its own jurisdiction." Dkt. 26 at 1. In that same Order, the Court noted that Mr. Soltan had "presented no evidence sufficient to create an inference" warranting the information then sought. *Id*. at 2. Mr. Soltan fares no better now in his speculation that the government's certification here is "unusual," "ambiguous" or of questionable "provenance." Mot. at 2. As explained in the preceding sections, the State Department's certification of immunity is in a normative form, there is no basis to question the United States' honest reporting of the defendant's diplomatic status, and that status— now certified—is conclusive and dispositive.

The purpose of immunity is to provide its recipient "immunity from *suit* rather than a mere defense to *liability*." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (recognizing this distinction in context of qualified immunity) (emphasis added); *see also Doğan v. Barak*, 932 F.3d 888, 895 (9th Cir. 2019). Hailing Mr. Beblawi into Court or demanding further proof of diplomatic immunity would undermine the purpose and effect of the immunity itself.

Second-guessing Executive Branch decisions regarding immunity, via the fishing expedition sought by Mr. Soltan, would be inappropriate. *See Republic of Mexico v. Hoffmann*, 324 U.S. 30, 35 (1945) ("It is therefore not for the courts to deny an immunity which our

government has seen fit to allow"); *Ex parte Republic of Peru*, 318 U.S. 578, 588–89 (1943) ("The certification and the request [of immunity] . . . must be accepted by the courts as a conclusive determination by the political arm of the Government"); *Samantar v. Yousuf*, 560 U.S. 305, 310-12 (2010) (explaining the role of deference to State Department "suggestions of immunity" in the two-step procedure for assessing foreign official immunity); *Doğan v. Barak*, 932 F.3d at 892 (acknowledging district court's finding that "federal courts generally have deferred to executive branch determinations of foreign official immunity"); *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974) ("Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy").

Jurisdictional discovery is not as of right.  *Belhas v. Ya'alon*, 515 F.3d 1279, 1290 (D.C. Cir. 2008) ("The district court was well within its discretion to deny jurisdictional discovery"); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) ("we do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did").  While jurisdictional discovery is frequently allowed in personal jurisdiction challenges,[13] it is much more restrictively available with respect to immunities from suit.  *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998); *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

In comparable foreign sovereign immunity cases, courts have held that any need for jurisdictional discovery requires an established showing that additional information will

---

[13]  *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated by Samantar v. Yousuf*, 560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010); http://www.westlaw.com/Link/Document/FullText?findType=L&pubNum=1000600&cite=USFRCPR12&originatingDoc=I78e70774972e11dea0f697d39b576f27&refType=LQ&originationContext=document&vr=3.0&rs=cblt1.0&transitionType=DocumentItem&contextData=(sc.Search) *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019).

substantiate *exceptions* to immunity.  *Butler v. Sukhoi Co.,* 579 F.3d 1307, 1314 (11th Cir. 2009)

(noting the defendant's legitimate right to immunity from discovery under principles of comity).

Likewise, in *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013), the court held that a party is

not entitled to jurisdictional discovery without showing how additional facts would withstand a

motion to dismiss, and noted that the plaintiff's burden is greater where it is attempting to disprove

the applicability of an immunity-derived bar to suit, because immunity is intended to shield the

defendant from the burdens of defending the suit, including the burdens of discovery.  *Id.* at 264;

*accord, Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir.

2018); *Freeman v. United States,* 556 F.3d 326, 341-42 (5th Cir. 2009).

Here, there is no assertion by Mr. Soltan that the information he seeks could shoehorn his

case into any of the three exceptions to VCDR Art. 31 immunity cited by the State Department at

Dkt. 32-1.  As *Belhas v. Ya'Alon*, 466 F. Supp. 2d 127, 133 (D.D.C. 2006), *aff'd,* 515 F.3d 1279

(D.C. Cir. 2008), held:

> [a] finding of sovereign immunity here does not rest upon factual
> findings such as the accidental nature of the shelling, but rather on
> the lack of a statutory exception in the Foreign Sovereign
> Immunities Act that grants the Court subject matter jurisdiction over
> this lawsuit. That is a legal conclusion rather than a factual finding;
> for that reason alone, it is apparent that no jurisdictional discovery
> is required.

*Id*. at 133.

The recent decision in *Broidy,* 944 F.3d 436, is instructive, affirming that the district court

was within its discretion in denying discovery in an action alleging a Moroccan diplomat had

participated in hacking computers, where the diplomat moved to dismiss for lack of subject matter

jurisdiction based on the VCDR:

> Further, contrary to plaintiffs' contentions otherwise, it was
> appropriate for the district court to balance the need for
> jurisdictional discovery with the risk of imposing discovery
> obligations on a diplomat who in fact possesses immunity from the
> court's jurisdiction—and, moreover, who generally "is not obliged
> to give evidence as a witness" under the VCDR. VCDR art. 31(2).

> Like sovereign immunity, diplomatic immunity protects the diplomatic mission "from the expense, intrusiveness, and hassle of litigation." *Arch Trading*, 839 F.3d at 206. Achieving this goal requires that "a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction." Id. In the FSIA context, this Court has described discovery as "warranted only to verify allegations of specific facts crucial to an immunity determination" and inappropriate where "plaintiffs do not yet know what they expect to find from discovery" and advance only broad demands for discovery of the kind plaintiffs advanced in their opposition to the motion to dismiss. *Id*. at 207 (affirming denial of jurisdictional discovery where "plaintiffs did not specify ... what discovery they might seek").
>
> Accordingly, the district court did not abuse its discretion in denying plaintiffs jurisdictional discovery.

*Id*. at 446-47.

Like the plaintiff in *Broidy*, Mr. Soltan conjures "vital questions" and "does not yet know what [he] expect[s] to find from discovery."  All evidence and confirmation from the United States establish Mr. Beblawi's diplomatic immunity without the possibility of any enumerated exception, and no additional extraordinary inquiry can dislodge the conclusive nature of this immunity and the concomitant requirement of dismissal for lack of subject matter jurisdiction.

## CONCLUSION

Mr. Soltan seeks to stretch out a media-driven suit by publicly jousting with the United States and Egypt over the "provenance" of an accredited senior diplomat's certified immunity.  For the above reasons, and those set forth in the Corrected Memorandum in support of the motion to dismiss, Dkt. 30-1, and in the motion to quash, Dkt. 24, plaintiff's motion should be denied, and the case "shall" be dismissed without leave to amend. 22 U.S.C. § 254d. Respectfully, upon such an Order, a further Reply to plaintiff's Consolidated Opposition at Dkt. 34/35 may not be

necessary.[14]

Respectfully submitted,

Dated:  August 3, 2020

*/s/ Timothy M. Broas*

TIMOTHY M. BROAS (D.C. Bar #391145)
RACHEL A. BECK (D.C. Bar #1029929)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW Suite 700
Washington, DC  20004
Tel.: (202) 508-6000
Email: timothy.broas@bclplaw.com
        rachel.beck@bclplaw.com

*/s/ Robert H. Bunzel*

ROBERT H. BUNZEL (*pro hac vice*)
LOUISE ANN FERNANDEZ (*pro hac vice*)
JOHN J. BARTKO (*pro hac vice*)
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center Suite 800
San Francisco, CA 94111
Tel: (415) 956-1900
Email: rbunzel@bzbm.com
        lfernandez@bzbm.com
        jbartko@bzbm.com

*Attorneys for Hazem Abdel Azis El Beblawi*

---

[14]   *See* July 21, 2020 Minute Order.