UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMED SOLTAN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 20-1437 (CKK) |
| HAZEM ABDEL AZIZ EL BEBLAWI, | ) ) ) |
| Defendant, | ) ) ) ) ) |

**STATEMENT OF INTEREST OF THE UNITED STATES**

## INTRODUCTION

Plaintiff, Mohamed Soltan, has brought this lawsuit against Hazem Abdel Aziz El Beblawi, for actions he allegedly took while serving as the Prime Minister of Egypt. At the time that the Complaint was filed and Plaintiff claims to have served him with process, El Beblawi was serving as the Principal Resident Representative of the Arab Republic of Egypt to the International Monetary Fund ("IMF"). On December 19, 2020, this Court entered an Order soliciting the views of the Department of State with respect to several issues raised by this case. *See* ECF No. 39. Pursuant to 28 U.S.C. § 517,[1] the United States of America submits this Statement of Interest to inform the Court that the Department of State ("State") has provided a certification as to El Beblawi's diplomatic status. As set forth below, State's certification of El Beblawi's diplomatic status is conclusive with respect to that issue. The United States does not take a position in its submission as to the merits of Plaintiffs' allegations, and its submission should not be understood as reflecting a determination regarding the underlying allegations in this case.

## BACKGROUND

### I. El Beblawi's Diplomatic Status

Consistent with standard accreditation practice, the IMF notified State that El Beblawi assumed the position as Egypt's Principal Resident Representative to the IMF, effective November 2, 2014. *See* Decl. of Clifton C. Seagroves (attached as Exhibit 1) ("Seagroves Decl.") ¶ 2; Clifton C. Seagroves Certification, Office of Foreign Missions, United States Department of State (attached as Exhibit A to the Declaration of Timothy M. Broas), ECF No. 32-1 ("Seagroves

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. §517.

2

Certification"). Following State's standard practice for the accreditation of foreign representatives to international organizations, the United States accepted the IMF's notification and State's records reflect El Beblawi's status as Egypt's Principal Resident Representative to the IMF effective from November 2, 2014. Seagroves Decl. ¶¶ 2-3.

In June 2020, the Arab Republic of Egypt requested a certification of El Beblawi's diplomatic status. *See* ECF No. 32-1 at 2. In response, the State Department provided Egypt with a certification, dated July 7, 2020, signed by Clifton C. Seagroves, Principal Deputy Director, Office of Foreign Missions, United States Department of State ("Seagroves Certification"). The Seagroves Certification explained that El Beblawi "is notified to the Department as assuming his duties as the Principal Resident Representative of the Arab Republic of Egypt to the International Monetary Fund, effective November 2, 2014, and that he continues to serve in such capacity." ECF No. 32-1 at 3. It also explained that "[p]ursuant to Article V, Section 15(4) of the Agreement between the United Nations and the United States Regarding the Headquarters of the United Nations (61 Stat. 3416, TIAS 1676, 11 UNTS 11; entered into force November 21, 1947), principal resident representatives of members of a specialized agency are entitled to the same privileges and immunities as are accorded to diplomatic envoys accredited to the United States." *Id*. "Per Article 1 of the Agreement between the United Nations and the International Monetary Fund (16 UNTS 325; entered into force November 15, 1947), the International Monetary Fund is such a specialized agency." *Id*. "In the United States, the privileges and immunities of diplomatic envoys (now called 'diplomatic agents') are those provided under the Vienna Convention on Diplomatic Relations (VCDR) (23 UST 3227, TIAS 7502, 500 UNTS 95; entered into force for the United States December 13, 1972)." *Id*. Those immunities include "immunity from" the receiving State's

"civil and administrative jurisdiction" with certain limited exceptions. *Id*. (quoting Article 31 of the VCDR).

The official records of the Office of Foreign Missions indicate that the IMF notified State of El Beblawi's termination as the Principal Resident Representative of Egypt to the IMF, effective October 31, 2020. Seagroves Decl. ¶ 4.

## II. Procedural Background

Plaintiff has brought this suit against El Beblawi for alleged actions during his tenure as Prime Minister of Egypt from July 9, 2013 to March 1, 2014. Plaintiff asserts that this Court has jurisdiction under the Torture Victim Protection Act, 28 U.S.C. § 1350.

On June 8, 2020, Plaintiff filed an Affidavit of Service claiming that, on June 3, 2020, a summons and complaint was served upon El Beblawi by hand while he was accredited to the IMF as Principal Representative of the Arab Republic of Egypt to the IMF. *See* ECF No. 9; *see also* Seagroves Certification, Seagroves Decl. ¶¶ 2-4. Plaintiff alleges that El Beblawi, while Prime Minister of Egypt, was responsible for his being "almost killed, brutally wounded, imprisoned and tortured for nearly two years in Egypt because he dared to expose to the world the Egyptian military government's brutal suppression and massacre of peaceful demonstrators." Compl. ¶ 1. Plaintiff seeks compensatory, punitive, and exemplary damages, as well as a jury trial. *Id*. at 47.

On June 24, 2020, El Beblawi moved to dismiss the Complaint, ECF No. 25. Among other arguments, El Beblawi asserted diplomatic and foreign official immunity. ECF No. 30-1 at 15-24. On July 17, 2020, El Beblawi filed a witness declaration made by his counsel, Timothy M. Broas. ECF No. 32. El Beblawi attached the Seagroves Certification that had been sent in response to the aforementioned request from the Government of Egypt. *Id*. Subsequently, on July 20, 2020, Plaintiff moved to stay the proceedings for the Court to assess the status of El Beblawi's diplomatic

immunity and challenged whether El Beblawi should have been accorded diplomatic status based on the UN Headquarters Agreement. ECF No. 33. El Beblawi opposed the motion. ECF No. 37.

In its Order dated December 19, 2020, the Court asked the Department of State for its views on three related questions:

1. Does the State Department's certification of Defendant's immunity rely on the IMF's agreement to Defendant's status; and if so, would the State Department produce to the Court documentation of the IMF's agreement, *or*

2. If the State Department's certification is not based on the IMF's agreement to Defendant's status, would the State Department be able to consult with the IMF and obtain such documentation—without the State Department needing to express a legal position on whether such agreement is required pursuant to the UN Headquarters Agreement; *or*

3. If it is the State Department's position that the UN Headquarters Agreement does not require the IMF's agreement to Defendant's status as 'principal resident representative' or immunity, what is the State Department's legal analysis for such conclusion.

ECF No. 39 at 2-3. The Department respectfully submits its views below.

## DISCUSSION

### I. The State Department's Certification of El Beblawi's Diplomatic Status is Conclusive as to his Status.

In response to the Court's inquiry, the Department of State's Certification of El Beblawi's diplomatic status is conclusive as to his status. Article II, Section 3 of the Constitution, the Reception Clause, expressly grants the President the authority to "receive Ambassadors and other public Ministers."[2] "The Reception Clause recognizes the President's authority to determine the

---

[2] More broadly, Article II, Section 2 provides that the President "shall have the Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." These provisions, along with others vesting the "executive Power" in the President and requiring the President to "take Care that the Laws be faithfully executed," *see* U.S. Const. art. II, §§ 1, 3, confer on the President the authority to conduct foreign affairs. *See generally Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President also possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs.").

status of diplomats, a fact long confirmed by all three branches." *Muthana v. Pompeo*, 985 F.3d 893, 907 (D.C. Cir. 2021). The President's "'action in receiving diplomatic representatives is conclusive on all domestic courts.'" *Id*. (quoting *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 138 (1938)) (cleaned up). Accordingly, "more than a century of binding precedent . . . places the State Department's formal certification of diplomatic status beyond judicial scrutiny[.]" *Id*. at 906. The law is clear that courts must defer completely to the Executive Branch's determination that a foreign official has diplomatic status. *See In re Baiz*, 135 U.S. 403, 432 (1890) (noting that courts do "not assume to sit in judgment upon the decision of the executive in reference to the public character of a person claiming to be a foreign minister, and therefore have the right to accept the certificate of the state department that a party is or is not a privileged person, and cannot properly be asked to proceed upon argumentative or collateral proof"); *Abdulaziz v. Metro. Dade Cnty.*, 741 F.2d 1328, 1331 (11th Cir. 1984) ("Although defendants argue that the State Department certificate is reviewable in court, the courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status"); *Montuya v. Chedid*, 779 F. Supp. 2d 60, 62 (D.D.C. 2011) ("The Court must accept the State Department's determination that Defendants have diplomatic status."). In other words, once the Department of State determines an individual's diplomatic status, courts must not look behind the certification to perform their own analysis of its basis.

In the present case, and consistent with Department policy,[3] the State Department provided the Government of Egypt with the Seagroves Certification on July 7, 2020, and El Beblawi has

---

[3] The State Department's Foreign Affairs Manual (2 FAM 234.1 "Certification of Immunity") provides that "[i]n any case in which an employing mission, international organization or United States law enforcement authority requests from the Department of State a certificate of immunity in a criminal or civil context pertaining to accredited personnel, S/CPR (for bilateral Chiefs of Mission, Heads of Delegation, Chargés d'affaires, Deputy Chiefs of Mission, and their

provided a copy to the Court. ECF No. 32-1. This formal certification that El Beblawi enjoyed diplomatic status at the time he was purportedly served with legal process "cannot be undermined by collateral evidence." *See Muthana,* 985 F.3d at 908; *see also* 7 Op. Atty. Gen. 186, 186, 209 (1855) ("Ambassadors and other Public Ministers" subject to Reception Clause include "all possible diplomatic agents which any foreign power may accredit to the United States" and "all officers having diplomatic functions whatever their title or designation."). For this reason, this Court must "decline to second-guess the Executive's recognition of [El Beblawi's] diplomatic status." *See Muthana,* 985 F.3d at 908; *see also Carrera v. Carrera*, 174 F.2d 496, 498 (D.C. Cir. 1949) (explaining that once the State Department certified an individual's name as being on the list of those with diplomatic status, "judicial inquiry into the propriety of its listing was not appropriate").

Foreign policy considerations underscore the requirement that this Court give "conclusive weight to the Executive's determination of an individual's diplomatic status," *see Muthana*, 985 F.3d at 907, regardless of whether that status arises from a traditional diplomatic mission or from a foreign state's participation in an international organization hosted by the United States, *see* 7 Op. Atty. Gen. at 186, 209. Given U.S. obligations arising from binding agreements, and the ensuing expectations of foreign governments sending representatives to the United States as the host nation of the United Nations and affiliated specialized agencies, disregarding the certification of El Beblawi's status or of any other foreign representatives to such agencies for whom the State Department has recognized diplomatic status would seriously damage U.S. foreign policy interests.

---

dependents) or OFM (for all others aside from those reserved for USUN) will provide a certification setting forth the immunities enjoyed by the person at issue."

Given the questions posed by the Court, we note solely for the Court's cognizance that the State Department Certification is consistent with Article V, Section 15(4) of the Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations ("UN Headquarters Agreement"), and the process followed is in keeping with the Department's standard practice.

In this case, all three entities referred to in Section 15(4) of the UN Headquarters Agreement—the IMF, Egypt, and the United States—agreed as to El Beblawi's diplomatic status, even though no tripartite agreement is required for Principal Resident Representatives by the terms of Section 15(4) of the UN Headquarters Agreement.[4] That is reflected in standard accreditation practice outlined above and in the Seagroves Declaration. In accordance with that practice, the IMF notified El Beblawi to the State Department as assuming his duties as Egypt's Principal Resident Representative to the IMF, which would have been based on a notification of the appointment by the Egyptian government to the IMF. Seagroves Decl. ¶ 2. State then accepted the IMF's notification and recorded El Beblawi's diplomatic status. *Id.* ¶ 3.

Here, El Beblawi's status as Principal Resident Representative entitled him to the same immunities as are accorded to diplomatic agents under the VCDR, including those specified in Article 31 of the VCDR. *See* Seagroves Certification. As noted above, this Court must give conclusive weight to the State Department's determination of El Beblawi's diplomatic status. In addition, courts must accord the Government's views "great weight" when determining the *scope*

---

[4] Notwithstanding the Court's questions regarding the existence of a tripartite agreement, the terms of Section 15(4) of the UN Headquarters Agreement make clear that no agreement is required in order for the United States to register a principal resident representative to a UN specialized agency as entitled to diplomatic agent level privileges and immunities. Per Section 15(4), only the immunity accorded other "resident members of the staffs of representatives" must be agreed between the specialized agency, the United States, and the government of the state concerned.

of immunity conferred by any relevant treaty or statute. *See Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."). *See also, e.g., Carrera*, 174 F.2d at 498 (adjudicating plaintiff's claims that the case involved exceptions to statutory immunity after explaining that "judicial inquiry into the propriety of [State's] listing" of a foreign official as having diplomatic status "was not appropriate"); *Montuya*, 779 F. Supp. 2d at 62 ("Because Defendants have diplomatic status under the VCDR, they are entitled to diplomatic immunity, unless one of the exceptions in the VCDR applies."). Although the United States does not understand the parties to dispute that Plaintiff's claims fall within the scope of immunity conferred by Article 31, this Court should find, giving great weight to the Department of State's views, that the scope of immunity under Article 31 encompasses the claims against El Beblawi in the Complaint.

## II. Suits That Are Commenced When an Official Has Diplomatic Status Continue to be Governed by that Status.

The State Department's records indicate that the IMF notified the Department of State of El Beblawi's termination as the Principal Resident Representative of the Arab Republic of Egypt to the IMF, effective October 31, 2020. Seagroves Decl. ¶ 4. El Beblawi's change of status has no effect on the instant case because Plaintiff claims to have served El Beblawi while he enjoyed diplomatic agent status. *See Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980-81 (D.C. Cir. 1965) (holding that "Ambassador's diplomatic immunity would have been violated by any compulsory service of process on him by [a U.S.] Marshal"); *United States v. Khobragade*, 15 F. Supp. 3d 383, 387 (S.D.N.Y. 2014) ("Courts in civil cases have dismissed claims against individuals who had diplomatic immunity at an earlier stage of the proceedings, even if they no longer possessed immunity at the time dismissal was sought."). Accordingly, El Beblawi held diplomatic status at

the time when the suit was commenced, and the Court should dismiss without prejudice claims falling with the scope of his immunity. Whether a new action could be served and maintained were it to be refiled in the future is beyond the scope of this submission.

## CONCLUSION

For the foregoing reasons, El Beblawi enjoyed diplomatic status at the time of commencement of this suit; the Court should accept State's certification of El Beblawi's status and decline to second-guess its basis.

Dated: April 1, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

/s/ *Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Phone: (202) 514-4964
Fax: (202) 616-8470
E-mail: Liam.C.Holland@usdoj.gov